Robert E. HICKS, as Trustee of North American Acceptance Corporation, Plaintiff-Appellant,

v.

Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, and Dr. Ernest L. Boyer, U. S. Commissioner of Education, Defendants-Appellees.

No. 77–2593.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1979.

Maurice N. Maloof, Robert E. Tritt, Atlanta, Ga., for plaintiff-appellant.

William L. Harper, U. S. Atty., Robert J. Castellani, First Asst. U. S. Atty., Atlanta, Ga., Steven J. Edelstein, ARA, Dept. of H. E. W., Atlanta, Ga., for defendants-appellees.

Before GODBOLD, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

This action was instituted by Robert E. Hicks, as Trustee of North American Acceptance Corporation (NAAC), to seek government repayment of defaulted student loans. NAAC is a financial institution that made loans to students as an eligible lender in the Federally Insured Student Loan Program of the United States Office of Education, Department of Health, Education and Welfare. Under this program, the federal government insures the repayment of student loans that conform to the Higher Education Act of 1965, Title IV, Part B, as amended, §§ 1001–1145 (1968), 20 U.S.C. §§ 1071–1085, and relevant regulations. The dispute in the present case arose when the government rejected 95 of NAAC's claims for government repayment of defaulted student loans on the ground that NAAC disbursed the loan funds before it had received a certificate of insurance for each loan from the Commissioner of Education (the Commissioner) and that NAAC thereby had failed to conform to the statute and relevant regulations.

It is uncontested that NAAC disbursed the student loans after it entered into a "Contract of Insurance" with the Commissioner but before loan applications were individually stamped "approved" by the government. In the district court, NAAC contended that the government waived its requirement that the lender not disburse loan funds before receiving an "issuance of insurance" because subordinate employees of the Office of Guaranteed Student Loans stamped the loan applications for approval after the beginning of the school term for which the funds were to be provided[1] and allegedly made statements approving NAAC's practice of disbursing loan money prior to the stamping of the loans. The loan company claimed, in the alternative,

[1]. NAAC argued that because the government's student loan application forms disclosed the date that school began, and educational institutions universally required full tuition payment on or before the opening of school, government employees necessarily would have understood that the funds had been disbursed prior to the beginning of the school term to permit the student borrowers to enroll. It reasoned that by virtue of this knowledge, the government waived the requirement of issuance of insurance before disbursement and effectively insured the stamped loans when it stamped the loan applications after the beginning date of school disclosed on the application.

that even if the requirement that the lender receive a certificate of insurance before disbursing funds did apply to the 95 disallowed loans, it had complied with the government regulations because the "Contract of Insurance" caused the insurance to be issued retroactive to the date of fund disbursement for each loan.

The district court dismissed NAAC's claims for loan repayment by granting the government's motion for summary judgment. Although we believe that the government in this case has not turned square corners in its business dealings with its citizens,[2] we reluctantly find that the applicable law controlling the use of waiver and estoppel against the government compels us to affirm.

Government regulation 45 C.F.R. § 177.42(b), promulgated pursuant to the Higher Education Act of 1965, establishes procedures by which the Commissioner of Education insures student loans. It provides in relevant part that:

> Each eligible lender with which the Commissioner has entered into an agreement . . . [under the program] may make application to the Commissioner for Federal loan insurance in connection with each application for a loan which the lender has initially determined to be eligible for such insurance coverage. Upon receipt of such application . . the Commissioner shall determine whether or not the loan is insurable, and if the loan is determined to be insurable, the Commissioner shall, by affixing to the

application evidence thereof, advise the lender that the loan is insurable and the amount of insurance. The insurance shall extend to all disbursements made pursuant to the loan, *except that, unless expressly provided for, no disbursements made on a loan prior to the issuance of insurance shall be covered.*

(emphasis added). NAAC's contention that the government waived the requirement of issuance of insurance before loan disbursement, set forth in 45 C.F.R. § 177.42(b), cannot be accepted. It is true that the Higher Education Act of 1965 authorizes the Commissioner to "enforce, pay, compromise, *waive*, or release any right . . ." 20 U.S.C. § 1082(a)(6) (emphasis added). However, none of the persons to whom NAAC seeks to attribute the waiver of the applicable government regulation were empowered to waive or make an express exception to the regulatory provisions of the Federally Insured Student Loan Program, including 45 C.F.R. § 177.42(b).

Federal regulation prohibits any official, agent or employee of the Office of Education from waiving or altering any provision of the office's regulations or of any relevant statute except through amendment by publication in the Federal Register, and specifies that "no action or failure to act on the part of such official, agent, or employee shall operate in derogation of the Commissioner's right to enforcement of said provisions in accordance with their terms." 45 C.F.R. § 100a.483. In addition, the uncontroverted[3] affidavits of the student loan

---

**2.** The government, faced with escalating insurance claims under the Federally Insured Student Loan Program, evidently has looked to technical infringements of the letter of its regulations as a shield against lenders' claims for reimbursement on loans made pursuant to its invitation. The dollar amounts paid by the government on defaulted student loan claims arose drastically from $1,493,321 in 1970, the third year of the program, to $59,116,719 in 1974, $77,177,836 in 1975, and $114,583,986 in 1976.

**3.** On appeal, NAAC contends for the first time that it was unable to controvert the affirmations that named employees lacked actual authority to waive the relevant regulation because it had not completed discovery when the

government's summary judgment motion was granted. Since this ground of attack on the trial court's order was not raised below, it cannot be considered on appeal. NAAC also now, for the first time, objects to the competency of the Kohl and Parker affidavits on the ground that they were not based on the affiants' personal knowledge of whether the Commissioner had delegated waiver authority to the named employees. However, an opposing party must move to strike an affidavit that violates Fed.R. Civ.P. 56(e) in the district court in order for the objection to be considered on appeal, *Otto Driveaway of Hialeah, Inc. v. ICC*, 360 F.2d 446 (5th Cir. 1966); C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2738 (1973), and the affidavits therefore are properly a part of

program's chief administrative officer, Acting Associate Commissioner of Education Edwin P. Parker, III, and his predecessor in office, Associate Commissioner Kenneth A. Kohl, state that the authority to waive or make an express exception to the program's regulatory provisions was never delegated to subordinate employees below the associate commissioner level and, specifically, was never delegated to the employees named by NAAC as having made statements to it approving its practice of disbursing student loan money prior to having the loans stamped. Therefore, even if government employees purported to waive the requirements for obtaining federal student loan insurance, either by express statements or by stamping the loans "approved," they were acting outside the bounds of their authority and could not bind the government to repay the defaulted loans.[4]

■ Similarly, the alleged government approval of NAAC's practices and the lender's resulting change of position and injury[5] did not prevent the United States, under a theory of estoppel, from invoking the requirements of 45 C.F.R. § 177.42(b) to reject NAAC's claims. Estoppel cannot be asserted against the United States in actions arising out of the exercise of its sovereign powers in encouraging lenders to make student loans. *See, e. g., Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Sanitary District of Chicago v. United States*, 266 U.S. 405, 427, 45 S.Ct. 176, 69 L.Ed. 352 (1925); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

In deciding this case, we are constrained by well-established precedent. Prior cases mandate that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insurance Corp. v. Merrill, supra.* "The United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do . . . what the law does not sanction or permit. . . . [T]hose dealing with an agent of the United States must be held to have had notice of the limitation of his authority." *Wilber National Bank of Oneonta, New York v. United States*, 294 U.S. 120, 123–24,

the record on which the district judge was entitled to rely in ordering summary judgment in favor of the government.

4. NAAC asserted that the government employees who approved its practice of disbursing funds before receipt of insurance certificates for individual loans had at least *apparent* authority to waive the requirements of Office of Education regulation 45 C.F.R. § 177.42(b), even if they lacked *actual* authority to do so, and that therefore a valid waiver was effected. However, the doctrine of apparent authority holds that an agent who occupies a position of responsibility supporting a third party's reasonable inference that the agent has the authority to make commitments for his principal that he purports to have can bind the principal with respect to the third party. *See Restatement (Second) of Agency* § 8 (1958). Apparent authority differs from pure estoppel in that apparent authority does not require that the third party, who acted in reliance on the agent, have suffered injury in order to recover against the principal. In the usual agency case, however, little turns upon the distinction between apparent authority and estoppel, and courts have repeatedly stated that apparent authority is based upon estoppel. *Restatement (Second) of*

Agency, supra. Apparent authority, like pure estoppel, has no place in a suit seeking to bind the federal government in its sovereign capacity by the unauthorized actions of government agents. As noted *infra* at p. 68, *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947), clearly ruled that the concept of apparent authority could not be used against the government by holding that those dealing with the United States bore the risk of having accurately ascertained that government agents were acting within the scope of their actual authority.

5. We assume that with respect to the loans at issue in the present case, NAAC "changed its position" and was injured because it suffered a loss when it failed to obtain federal insurance for the loans after government agents had led it to believe that it had complied with their requirements for insurance coverage and that the individual loans were insured. *See Restatement (Second) of Agency*, § 8B (1958) ("Change of position, as the phrase is used in the restatement of this subject, indicates . . . suffering a loss or subjection to legal liability.").

55 S.Ct. 362, 364, 79 L.Ed. 798 (1935). "[T]hat officers and employees of the government, with knowledge of what the defendants were doing, not only did not object thereto, but impliedly acquiesced therein . . . must fail [as a ground of estoppel] . . . . [N]eglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest." *Utah Power & Light Co. v. United States, supra*, 243 U.S. at 409, 37 S.Ct. at 391. This circuit has unambiguously recognized that "an estoppel [does not] arise through an act or representation made by an officer or agent without authority to act for the government in the premises," *United States v. State of Florida*, 482 F.2d 205, 209 (5th Cir. 1973), so that "[r]egardless of the strong moral implications, it is well established that the Government is not bound by the unauthorized or incorrect statement of its agents." *Posey v. United States*, 449 F.2d 228, 234 (5th Cir. 1971). Assuming for the purposes of argument that NAAC, in reliance on statements by government employees and on the issuance of certificates of insurance for individual loans after funds already had been disbursed, reasonably believed that all of its student loans were federally insured, under the relevant precedent there nevertheless can be no question of material fact as to the existence of government waiver or estoppel that would allow NAAC to recover on its claims.

■ In addition to arguing waiver and estoppel against the government's position

denying its claims for reimbursement, NAAC also claims that in fact it had complied with government regulations. NAAC asserts that under the Higher Education Act of 1965, § 429(a)(2), 20 U.S.C. § 1079(a)(2), the "Contract of Insurance" executed between the government and NAAC on July 12, 1971, was a government commitment covering all future loans to be made by NAAC under the Federally Insured Student Loan Program [6] and caused the issuance of insurance for loans NAAC made between September 1971 and September 1973 to be retroactive to the date of disbursement of each loan. The section of the Act on which NAAC seeks to rely states in relevant part that:

> Insurance evidenced by a certificate of insurance pursuant to subsection (a)(1) of this section shall become effective upon the date of issuance of the certificate, except that the Commissioner is authorized, in accordance with regulations, to issue commitments with respect to proposed loans, or with respect to lines (or proposed lines) of credit, submitted by eligible lenders, and in that event, upon compliance with subsection (a)(1) of this section by the lender, the certificate of insurance *may* be issued effective as of the date when any loan, or any payment by the lender pursuant to a line of credit, to be covered by such insurance was made.[7]

20 U.S.C. § 1079(a)(2) (emphasis added). However, the Act clearly makes the retroactive issuance of the certificate of insur-

---

**6.** The July 12, 1971, "Contract of Insurance for Loans to Students under Title IV of the Higher Education Act of 1965" states, among other things, that NAAC wishes to be able to secure federal loan insurance on student loans and that the federal government has found NAAC to be an eligible lender under the Act. It also provides that "within such limits as may be set by him, the Commissioner shall insure all loans made by the lender which are eligible for such insurance under such Act and the regulations issued thereunder, which Act and regulations . . . . are made a part of this contract." We find that such language supports NAAC's contention that the "Contract of Insurance for Loans to Students" is a government "commitment" with respect to proposed loans.

**7.** Subsection (a)(1), 20 U.S.C. § 1079(a)(1), to which reference is made in subsection (a)(2), provides:

> If, upon application by an eligible lender, made upon such form, containing such information, and supported by such evidence as the Commissioner may require, and otherwise in conformity with this section, the Commissioner finds that the applicant has made a loan to an eligible student which is insurable under the provisions of this part, he may issue to the applicant a certificate of insurance covering the loan and setting forth the amount and terms of the insurance.

ance discretionary with the Commissioner.[8] NAAC neither claimed nor proved that the Commissioner or his authorized delegates had exercised this discretion to make retroactive the effective date of the insurance for the contested loans. Since the insurance cannot be said to have been retroactively issued, NAAC failed to comply with federal regulation 45 C.F.R. § 177.42(b) by disbursing funds before its loan applications were approved and it received the certificates of insurance. As a result the United States did not insure the loans.

For the foregoing reasons, we must uphold the district court's summary judgment order denying NAAC recovery on defaulted student loans. Although the law compels us to rule that the government did not insure the loans at issue in the present case, one may doubt the wisdom of a doctrine that shields the United States from the consequences of actions or statements made by its agents and officers in business transactions with its citizens simply because the actions or statements were beyond the agent's actual authority. The current doctrine prohibiting estoppel against the government allows no consideration of the rationale underlying the rules of agency in ordinary fair business dealings or of the reasonableness of the citizen's reliance on the conduct or statements of government employees. We recognize the prima facie soundness of a general policy imposing on courts a duty "to observe the conditions defined by Congress for charging the public treasury," [9] *Federal Crop Insurance Corp. v. Merrill, supra,* 332 U.S. at 385, 68 S.Ct. at 3, and we recognize that "those who deal with

the government should turn square corners," *id.* at 387, 68 S.Ct. at 5 (Jackson, J., dissenting). But we can perceive no reason for applying these broad principles so unyieldingly that the "square corners . . . constitute a one-way street." *Id.* at 388, 68 S.Ct. at 5.

AFFIRMED.

---

**8.** The "Contract of Insurance" is a "commitments with respect to proposed loans" permitting under 20 U.S.C. § 1079(a)(2) discretionary retroactive issuance of insurance for loans made by an eligible Guaranteed Student Loan Program lender. *See,* n.6, *supra.* This agreement is not to be confused with a "certificate of comprehensive insurance coverage" authorized by 20 U.S.C. § 1079(b)(1). The "certificate of comprehensive insurance coverage" provides a blanket advance insurance certificate for all loans up to a specified aggregate amount made by a given eligible lender during a stipulated period under conditions established by the Commissioner.

**9.** The doctrine of estoppel itself would provide some prophylactic measures against indiscriminate raids on the federal treasury. A party urging estoppel against the government would be required to demonstrate that he had been led to believe that the government agent was acting within the scope of his authority, that such belief was reasonable, and that he had changed position and suffered injury as a result of his reasonable belief that the agent's representations were authorized.