FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff-Appellant,

v.

Jack H. HARRISON and Frederick G. Rixey, Defendants-Appellees.

No. 83–7123.

United States Court of Appeals, Eleventh Circuit.

June 29, 1984.

John F. Kizer, Jr., Birmingham, Ala., for plaintiff-appellant.

R.A. Ferguson, Jr., Leach, Hampe, Dillard & Ferguson, Ann Z. Arnold, Birmingham, Ala., for defendants-appellees.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

In this debt collection action appellant Federal Deposit Insurance Corporation ("FDIC") filed suit against appellees Jack H. Harrison and Frederick G. Rixey as guarantors of a promissory note made by one Henry B. Bell.[1] FDIC, as receiver of Southern National Bank, purchased the note and guaranty agreements from the bank after it was declared insolvent on June 14, 1979.

In 1977 Bell, Harrison and Rixey formed Real Estate Marketing Corporation. Southern National Bank agreed to loan the corporation slightly more than $30,000.00 on the condition that the men would sign limited guaranty agreements covering the debt. In March 1978, primarily to lower their individual income tax liabilities, the three incorporators divided the corporation's 1977 note into three parts, with each person becoming primarily liable on one of the three notes and signing a limited guaranty agreement on the notes of the other two. The guaranty agreements here at issue provided that Harrison and Rixey would pay all the debts of Bell up to $11,277.50. The notes and guaranty agreements were renewed in March 1979.

When Southern National Bank was declared insolvent in June 1979, FDIC was appointed receiver of the bank. Pursuant to 12 U.S.C. § 1823(e), it then purchased certain assets of the bank, including several promissory notes executed by Bell and the two notes executed by Harrison and Rixey. In October 1979, FDIC made a demand on Bell, Harrison and Rixey for payment of the three notes that were renewed in March 1979. After receiving his demand notice, Rixey contacted FDIC to determine the full extent of his liability. He testified, and the district court agreed, that an FDIC agent assured him that Harrison and Bell were paying off their loans and that he need pay only the amount stated on his own note. Rixey paid off his note shortly thereafter.

Harrison also contacted FDIC when he received his demand notice. He spoke to a liquidator named Marcia Carrigan, who was responsible for marshaling the assets of Southern National Bank, and was told by her that Rixey and Bell were paying their notes. Harrison testified, and the district court found, that when he asked Carrigan for the total amount of his liability, she informed him that he need pay only his own note and that he would not be held liable on his guaranty. The next day Harrison sent FDIC the following letter confirming his conversation:

Dear Ms. Carrigan:

I am enclosing herewith my check in the amount of $11,919.53 which is tendered to you with the assurances and understanding that Mr. Bell and Mr. Rixey are simultaneously and also paying their notes in full and that this releases me from any further obligation to Southern National Bank on any notes, guarantees, or any other loan executed by Messrs. Bell, Rixey and Real Estate Marketing Corporation.

Please acknowledge receipt of this check by returning to me the original of any notes or documents reflecting any claim against me by Southern National Bank.

Very truly yours,

HARRISON, JACKSON & LEE
Jack H. Harrison

---

1. The district court entered a default judgment against Bell on June 17, 1982. Bell did not appeal from the entry of judgment.

Harrison's check was marked "payment in full" and was cashed without protest.

In April 1981, approximately eighteen months later, FDIC sent demand letters to Harrison and Rixey to enforce their guaranty contracts against part of Bell's outstanding debt to FDIC. Unknown to Harrison and Rixey, Bell had not paid off his note but had entered into a special agreement with FDIC whereby he was to pay his 1979 note and other obligations in quarterly installments. According to an affidavit of an FDIC liquidator, Bell paid nearly $29,000.00 pursuant to the arrangement before he defaulted.

FDIC filed suit against Bell, Harrison and Rixey in July 1981, alleging that Bell had failed to pay all that was due on two notes and that Harrison and Rixey were liable as guarantors of Bell's debt up to $11,277.50. The court entered a default judgment against Bell in the amount of $50,236.96. It concluded, however, that FDIC was equitably estopped from asserting its claim against Harrison and Rixey as guarantors of Bell.[2] We affirm.

■ The doctrine of equitable estoppel precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose some material fact. *See Portmann v. United States,* 674 F.2d 1155, 1158 (7th Cir.1982); 3 J. Pomeroy, Equity Jurisprudence § 804 at 189 (5th ed. 1941). Federal law on the question whether a government agency may be estopped has been unevenly shifting over the decades. *See* K. Davis, Administrative Law Treatise § 17.03 at 252 (Supp.1982). Courts have been reluctant to estop the government when it acts in its sovereign capacity or

when its agents act beyond the scope of statutory or regulatory authority. In cases involving denial of citizenship, for example, the Supreme Court has declined to decide whether even "affirmative misconduct" would estop the Immigration and Naturalization Service from denying citizenship.[3] *See INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam); *INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (per curiam). This circuit also has declined to decide whether affirmative misconduct will estop the government when acting in its sovereign capacity. *Deltona Corporation v. Alexander,* 682 F.2d 888 (11th Cir.1982).

The Supreme Court decision most often cited as authority for refusing to apply estoppel against the government is *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In *Merrill,* an agent of the Federal Crop Insurance Corporation, a government corporation established by the Department of Agriculture, advised a farmer that the spring wheat the farmer intended to plant on winter wheat acreage was fully insurable against loss. The agent's advice was incorrect, since a federal regulation specifically excluded from coverage spring wheat planted on winter wheat acreage. When the farmer's crop was destroyed and his insurance claim denied, he filed suit against the Corporation, charging that he had relied to his detriment on the statements of the Corporation's agent. The Supreme Court refused to accept the farmer's estoppel argument, observing that only Congress had the authority to deplete the public treasury and that persons who deal with the government are charged with knowledge of federal statutes as well as the regulations promulgated under them.

---

**2.** The district court also held that Harrison had entered into a binding accord and satisfaction agreement with FDIC. Because we conclude that FDIC was estopped from enforcing the guaranty obligation against Harrison, we do not address this alternative holding.

**3.** The Supreme Court has expressly declined to decide what type of government conduct, if any,

warrants the application of equitable estoppel. *Heckler v. Community Health Services of Crawford County, Inc.,* —— U.S. ——, ——, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). It has recognized, however, the "interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government." *Id.*

Despite the reluctance of the Supreme Court to estop the government when it has performed a sovereign function, the circuit courts generally have held that the federal government may be estopped when it serves an essentially proprietary role and its agents act within the scope of their delegated authority. *See Deltona Corporation v. Alexander,* 682 F.2d 888 (11th Cir.1982); *Molton, Allen and Williams, Inc. v. Harris,* 613 F.2d 1176 (D.C.Cir. 1980); *United States v. Florida,* 482 F.2d 205 (5th Cir.1973); *United States v. Georgia-Pacific Co.,* 421 F.2d 92 (9th Cir.1970). Although the proprietary/sovereign distinction has been criticized as somewhat artificial and difficult to apply, *see Portmann,* 674 F.2d at 1161; *Georgia-Pacific,* 421 F.2d at 101, this circuit consistently has adhered to this approach, *see Buccaneer Point Estates, Inc. v. United States,* 729 F.2d 1297, 1299 n. 2 (11th Cir. 1984); *Deltona,* 682 F.2d at 891; *United States v. Florida,* 482 F.2d at 209.[4]

■ Activities undertaken by the government primarily for the commercial benefit of the government or an individual agency are subject to estoppel while actions involving the exercise of exclusively governmental or sovereign powers are not. Characteristic "sovereign" activities include interpretation of tax statutes, *see Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 (1957); enforcement of health and safety regulations, *see Pacific Shrimp Co. v. United States Department of Transportation,* 375 F.Supp. 1036, 1042 (W.D.Wash.1974); actions affecting federal property and Indian lands, *see New Mexico v. Aamodt,* 537 F.2d 1102, 1110 (10th Cir. 1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977); *United States v. Florida,* 482 F.2d 205 (5th Cir.1973); authorization of funds for public utilities, *see Somerville Technical Services v. United States,* 640 F.2d 1276, 226 Ct.Cl. 291 (1981); grants of disability benefits, *see*

*Gressley v. Califano,* 609 F.2d 1265 (7th Cir.1979); awards of student loans, *see Hicks v. Harris,* 606 F.2d 65 (5th Cir.1979); denials of United States citizenship, *see INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam); and the issuance of permits for developers' dredge and fill activities, *see Deltona Corporation v. Alexander,* 682 F.2d 888 (11th Cir.1982).

Proprietary governmental functions include essentially commercial transactions involving the purchase or sale of goods and services and other activities for the commercial benefit of a particular government agency. Whereas in its sovereign role, the government carries out unique governmental functions for the benefit of the whole public, in its proprietary capacity the government's activities are analogous to those of a private concern. *See Portmann v. United States,* 674 F.2d 1155 (7th Cir. 1982) (customer may estop Postal Service in claim for loss of "Express Mail" package; *United States v. Georgia-Pacific Co.,* 421 F.2d 92 (9th Cir.1970) (government estopped from enforcing contract whereby owner of timberlands agreed to convey parcel to government at later date); *Emeco Industries, Inc. v. United States,* 485 F.2d 652, 657, 202 Cl.Ct. 1006 (1973) (government estopped from denying terms of purchase agreement); *Dana Corporation v. United States,* 470 F.2d 1032, 1045, 200 Ct.Cl. 200 (1972) (same); *McQuagge v. United States,* 197 F.Supp. 460, 469 (W.D. La.1961) ("When the government enters the marketplace ... seeking to enforce a contractual right, ... it submits to the same rules which govern legal relations among its subjects."). After reviewing the role of FDIC in this case, we conclude that it acted in a proprietary capacity and therefore is subject to the rules of equitable estoppel.

■ FDIC was created as part of the Federal Deposit Insurance Corporation Act as an instrument for insuring to a limited extent the deposits of the banks participat-

---

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**412**

ing in the plan. The purpose of the Corporation is to promote the stability of the banking system by preventing runs on banks by depositors and keeping open the channels of trade and commercial exchange. *See D'Oench, Duhme & Company v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942). FDIC facilitates its purpose by serving in two distinct capacities: as an insurer of deposits of member banks and as a receiver for insured banks that have failed. As insurer one of the primary duties of the Corporation is to pay depositors of a failed bank; as receiver FDIC marshals the assets of the failed bank, sells acceptable assets of the failed bank to a financially sound and insured bank, and purchases and liquidates the assets that are unacceptable to the assuming bank. Because this "purchase and assumption" transaction facilitates a smooth transfer of assets with little or no disruption of normal banking operations, it is generally regarded as the most desirable means of maintaining stability in the banking industry when a bank fails. *See FDIC v. Merchants National Bank of Mobile*, 725 F.2d 634 at 637 (11th Cir.1984); *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). FDIC in this case was acting as receiver of Southern National Bank, and in its corporate capacity purchased the notes of Bell, Harrison and Rixey and demanded their payment. In its dealings with Harrison and Rixey, the Corporation performed essentially the same function as any other assuming bank that may have acquired some of the assets of a failed bank.

Although the issue has not been addressed in this circuit, other courts have held that when FDIC acts in its corporate capacity as receiver, its liability must be determined in the same fashion as that of a private party. *See Santoni v. FDIC*, 677 F.2d 174 (1st Cir.1982); *see also Lapudula & Villani, Inc. v. United States*, 563 F.Supp. 782, 784 (S.D.N.Y.1983) ("FDIC is not an integral part of the governmental mechanism but is rather a separate legal entity serving essentially a proprietary rather than a sovereign function.").[5] It has been held that when FDIC acts as a receiver and liquidating agent for a failed bank, as it did here, it merely "stands in the shoes of the insolvent bank." *FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir.1971).

We see no reason not to apply the traditional rules of equitable estoppel to the conduct of FDIC in this case. As a holder of the three promissory notes, FDIC was acting as any liquidating agent or receiver of an insolvent bank. Although the debt collection activities of the Corporation, like the activities of any government agency, might be viewed in a broad sense as contributing to the accomplishment of the Corporation's purpose of maintaining a stable banking environment, FDIC was primarily serving as an instrument of the banking industry when it became receiver for the failed Southern National Bank. As would any other receiver or liquidating agent, FDIC should be required to deal fairly with its debtors and should be held accountable for the representations of its agents. Had Bell's promissory note been acquired by a financially sound bank in a "purchase and assumption" transaction, the assuming bank would be subject to the doctrine of equitable estoppel. The Corporation should be treated no differently.[6]

---

**5.** The Supreme Court has indicated that one factor in determining whether the federal government should be estopped is the effect of estoppel on the public treasury. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981). The court in *Lapadula* observed that FDIC's profits do not inure to the benefit of the United States and its losses are not borne by the United States. 563 F.Supp. at 784. The Corporation sustains itself principally through insurance premiums assessed against member banks. Thus, the public treasury will

be unaffected by FDIC's success or failure in this action. *But cf. INS v. Miranda*, 459 U.S. 14, 103 S.Ct. 281, 283–84, 74 L.Ed.2d 12 (1983) (fact that public fisc will not be affected does not necessarily mean that government is subject to estoppel).

**6.** This is not to say that FDIC should be treated the same as a privately owned bank in all circumstances. Under federal common law and 12 U.S.C. § 1823(e), FDIC is afforded limited protection that is unavailable to assuming

In holding the principles of equitable estoppel applicable to FDIC in this case, we note that FDIC does not claim that the representations of its agents were unauthorized or contrary to statute or regulation. Thus, cases involving representations of government officers that were beyond the scope of their authority are distinguishable. *Cf. Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (FCIA regulation contrary to representation made by agent); *Hicks v. Harris,* 606 F.2d 65, 68 (5th Cir. 1979) ("The United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do ... what the law does not sanction or permit."). This is not a case governed by the often cited maxim, "Those dealing with an agent of the United States must be held to have had notice of the limitation of his authority." *Wilber National Bank of Oneonta, N.Y. v. United States,* 294 U.S. 120, 55 S.Ct. 362, 364, 79 L.Ed. 798 (1935).

■ Having decided that FDIC is subject to a claim of equitable estoppel when it acts in its corporate capacity to collect a debt acquired from an insolvent bank, we must now determine whether the elements of estoppel are present. Estoppel requires (1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated. *Matter of Garfinkle,* 672 F.2d 1340, 1347 (11th Cir.1982).

■ Reviewing the conclusions of the district court and the record in this case, we find sufficient evidence to support the district court's finding that all of the elements of estoppel were proved. Both Harrison and Rixey testified that FDIC agents assured them that Bell was dutifully paying off his note and that they would not be held to their guaranty agreements. Their testimony was supported by a letter sent by Harrison to the liquidator in charge confirming his conversation with the agent and the representations made therein. The assertions made in the letter were not challenged by FDIC; rather, FDIC promptly cashed Harrison's check, which Harrison had marked "payment in full." There was also credible testimony that Bell in fact was having difficulty paying off his note and that Harrison and Rixey may have been able to force Bell to satisfy his guaranty obligation before paying off his other creditors and additional obligations held by FDIC. An affidavit of an FDIC liquidator stating that Bell paid nearly $29,000.00 to the Corporation supports the district court's finding that Bell might have been able to satisfy his guaranty obligation had Harrison and Rixey pressed him to do so. Thus, we cannot say that the trial court was clearly erroneous when it concluded that Harrison and Rixey detrimentally relied on the representations of FDIC agents concerning the extent of their guaranty liability and the repayment status of their principle debtor.[7]

AFFIRMED.

banks. The debtor may not attempt to avoid his obligation to FDIC by asserting a claim of fraud on the part of the failed bank or by claiming that he and the bank had entered into a secret oral agreement prior to the acquisition of the asset by the Corporation. This special protection, however, is afforded only when necessary to further the policy of promoting the stability of the nation's banking system by facilitating FDIC's smooth acquisition of assets in a purchase and assumption transaction. It is essential that the Corporation be able to acquire assets of a failed bank without fear of unknown defenses that may have been valid against the bank. *Gunter v. Hutcheson,* 674 F.2d 862, 870 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct.

60, 74 L.Ed.2d 63 (1982). Such protections are not necessary where, as here, the conduct of FDIC itself gave rise to the defense of estoppel after the Corporation had acquired the asset.

7. Although we agree with FDIC that it would be unusual for a liquidating agent to inform a guarantor that the Corporation was not going to hold him to his guaranty, both Harrison and Rixey so testified and their assertions were found credible by the district court. An appellate court generally should accept the decisions of the district court on the credibility of witnesses. *North River Energy Corporation v. United Mine Workers of America,* 664 F.2d 1184 (11th Cir.1981).