Margaret A. ROSE a/n/f Christopher
Rose, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health &
Human Services, Defendant.

Civ. A. No. 1:87–CV–2114–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 11, 1989.

Charles Lee Martin, Decatur, Ga., Mark A. Eisenberg, Atlanta, Ga., for plaintiff.

Nina Hickson Perry, Asst. U.S. Atty., Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is brought by plaintiff on behalf of her son, Christopher, pursuant to 42 U.S.C. § 405(g), for review of the Secretary of Health and Human Services' determination that Christopher's entitlement to benefits commenced in February of 1983 rather than on the date of the death of his father. Presently before the court is the report and recommendation of the magistrate which recommends that the secretary's decision be affirmed. Inasmuch as plaintiff has filed written objections to this recommendation, the court is obliged to conduct a *de novo* review into this matter. 28 U.S.C. § 636(b)(1).

### I. STATEMENT OF FACTS.

The magistrate made his findings of fact after careful review of the administrative record and the parties' pleadings and briefs and following oral argument. Because neither party has objected to these findings, the court receives them with approval and ADOPTS them as its own. *See Lewis v. Smith*, 855 F.2d 736, 737 (11th Cir.1988); *LoConte v. Dugger*, 847 F.2d 745, 749–50 (11th Cir.1988). They are as follows.

Samuel S. Stalcup, Christopher's father, died on March 14, 1979. In April of 1979, plaintiff called a Social Security office in Atlanta and informed an official that she had a child; that the child's father had recently died; that she was not married to his father; and that she wanted to file for his Social Security benefits. The official with whom plaintiff spoke asked if she possessed written proof of paternity. Af-

ter plaintiff responded in the negative, she was informed that absent written proof of paternity, she could not apply for benefits.

In July of 1979, plaintiff retained an attorney in Tennessee to file a paternity suit on Christopher's behalf against Mr. Stalcup's estate in an effort to establish that Christopher was Mr. Stalcup's child. Shortly thereafter, in August of 1979, plaintiff again called the Social Security office, providing the official with the same information as before, but adding that she had initiated the paternity suit. Again, plaintiff was informed that she could not file for benefits until such time as she could provide the agency written proof of paternity.

In June of 1981, plaintiff and Christopher had their blood typed. Unlike plaintiff, Christopher's blood type proved to be B positive, the same as Mr. Stalcup's, and very rare. In the belief that these results might be the proof she needed to establish paternity, plaintiff again called the Social Security office, providing an official with the same information as before and adding the information concerning the results of the blood tests. Nevertheless, she was again told that she could not file an application for benefits because the blood tests were insufficient evidence of paternity.

In October of 1982, plaintiff's attorney in Tennessee told her that her paternity suit would be going to trial soon and that, in his opinion, she had a good chance of succeeding. She called the Social Security office again with this information and asked if she could then file her application for benefits. An official informed her that she still had no acceptable proof of paternity and that she could not file an application for benefits without it.

In August of 1983, plaintiff decided to call the Social Security Administration again. She provided an official with the same information as before and again was informed that she could not file an application for benefits without proof of paternity. This time, however, plaintiff informed the official that she intended to file for the benefits despite her lack of written proof of paternity. Plaintiff went to the Social

Security office that afternoon and filed her first application for child's insurance benefits. Predictably, the official with whom she met informed her that she would not be awarded these benefits because she had no acceptable proof of paternity. The Administration denied her application for lack of proof of paternity some two months later. Plaintiff failed to appeal this decision but subsequently filed a new application which was ultimately granted retroactively to a date six months prior to the filing of the first application. Plaintiff sought a reconsideration of this decision, claiming benefits running from the date of Mr. Stalcup's death, some four and one half years earlier. The Secretary declined to reconsider his earlier decision, however, and a subsequent hearing before an administrative law judge on the decision resulted in its affirmance. Plaintiff filed this action seeking review of the administrative law judge's ruling on the grounds that the secretary should be estopped from insisting upon compliance with 42 U.S.C. § 402(d)(1)(A)—which requires the filing of an application for benefits—because of the repeated statements of the secretary's agents pertaining to the need for written proof of paternity.

## II.  CONCLUSIONS OF LAW.

█ The doctrine of equitable estoppel precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose some material fact. *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir.1984). While the Supreme Court has never decided what type of conduct—if any —by a government employee would suffice to estop the government from insisting upon compliance with valid regulations, *Schweiker v. Hansen*, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1980), it is at least clear that the government may not be estopped on the same terms as any other litigant. *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Thus, in the absence of Supreme Court guidance, the Eleventh Circuit has formulated the

following test: For estoppel to apply against the government, (1) the traditional elements of estoppel must have been present; (2) the government must have been acting in its proprietary capacity rather than its sovereign capacity for the benefit of the public; and (3) the government's agent must have been acting within the scope of his authority. *United States of America v. Killough,* 848 F.2d 1523, 1526 (11th Cir.1988); *United States of America v. Vonderau,* 837 F.2d 1540, 1541 (11th Cir.1988).

 Plaintiff takes the position that the conduct of the government's agents in this instance rises to the level of "affirmative misconduct" so as to justify application of the doctrine of equitable estoppel. Specifically, plaintiff argues that this case presents a pattern of misconduct over a four year period indicating the existence of a "secret policy" implemented to prevent qualified applicants from receiving benefits. As noted by the magistrate, however, the assessment and distribution of child's insurance benefits under the Social Security Act is an exercise of the Social Security Administration's sovereign powers.[1] *See Harrison,* 735 F.2d at 411. Consequently, equitable estoppel is not a remedy available to plaintiff in this action. *Killough,* 848 F.2d at 1526; *Vonderau,* 837 F.2d at 1541. While application of this rule on occasion produces harsh results, "those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to law." *Community Health Services,* 467 U.S. at 63, 104 S.Ct. at 2225; *Vonderau,* 837 F.2d at 1542. Therefore, the magistrate's report and recommendation is received with approval and is hereby ADOPTED as the order and opinion of the court. Accordingly, the decision of the secretary is AFFIRMED.

## III.  CONCLUSION.

In sum, the decision of the secretary is AFFIRMED.

IT IS SO ORDERED.

---

1. The Eleventh Circuit has described the distinction between proprietary and sovereign functions as follows: "Proprietary governmental functions include essentially commercial transactions involving the purchase or sale of goods and services and other activities for the commercial benefit of a particular government agency. Whereas in its sovereign role, the government carries out unique governmental functions for the benefit of the whole public, in its proprietary capacity the government's activities are analogous to those of a private concern (citations omitted)." *Harrison,* 735 F.2d at 411.