**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**CHERRY, BEKAERT & HOLLAND, a general partnership, et al., Defendants.**

No. 88–1147–CIV–T–15C.

United States District Court,
M.D. Florida,
Tampa Division.

April 18, 1990.

See also 131 F.R.D. 596.

Alison Berman, Federal Deposit Ins. Corp., Washington, D.C., Leonard H. Gilbert, Robert Pass, Chris S. Coutroulis, Mary Stenson Scriven, Carlton, Fields, Ward, Emmanuel, Tampa, Fla., for plaintiff.

Michael Minkin, Hermelee Cowart & Minkin, Miami, Fla., John R. Gerstein, Ross, Dixon & Masback, Washington, D.C., for defendants.

### ORDER

CASTAGNA, District Judge.

Before the Court are plaintiff the Federal Deposit Insurance Corporation's (FDIC) motions for summary judgment on defendant Cherry, Bekaert & Holland's (Cherry Bekaert) third, fourth and eleventh affirmative defenses, and the respective responses.

In February, 1986 the FDIC was appointed receiver of Park Bank. As receiver, the FDIC subsequently sold particular assets to the FDIC in its corporate capacity, the plaintiff in this case. The FDIC seeks damages from defendant Cherry Bekaert, a partnership of certified public accountants, for its alleged negligent audit of Park Bank. Cherry Bekaert has raised numerous affirmative defenses in its answer, and the FDIC has moved for summary judgment on three of these defenses.

■ Cherry Bekaert's fourth and eleventh affirmative defenses assert that the FDIC's claims are barred on the grounds of comparative and/or contributory negligence, and failure to mitigate damages. In its response to the summary judgment motion, Cherry Bekaert argues that since the FDIC in its corporate capacity is an assignee of the FDIC in its capacity as receiver, the assignee is subject to the same defenses as could be asserted against the assignor. Thus, Cherry Bekaert is entitled to assert as a defense against the FDIC the alleged comparative negligence of Park Bank's officers, and, to the extent that the FDIC seeks to recover damages arising after it was appointed receiver, the comparative negligence of the FDIC after it took over the bank.

In considering whether Cherry Bekaert may assert these affirmative defenses against the FDIC for its actions after it assumed the receivership, the Court finds two Eleventh Circuit decisions helpful. In *FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.1984), the court held that the FDIC acting in its corporate capacity to collect debts acquired from a failed bank was subject to the same defenses as any other private party. Thus, since the defendants in the case could have asserted the equitable estoppel defense against a private party, the court permitted the defense against the FDIC. The *Harrison* decision goes on to state that although the FDIC is protected from defenses of fraud on the part of the failed bank, or oral agreements between the borrower and the failed bank, defenses often asserted by borrowers when the FDIC seeks to collect on defaulted loans, this protection "is afforded only when necessary to further the policy of promoting the stability of the nation's banking system by facilitating FDIC's smooth acquisition of assets in a purchase and assumption transaction." *Id.* at 413 n. 6.

A more recent decision, *FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir.1989) once again declined to afford the FDIC in its corporate capacity special protected status. In *Jenkins*, the FDIC argued that pursuant to statutory and common law, it was entitled to absolute priority over any other creditor's claims against the failed bank. While the Court agreed that the FDIC should be permitted to maximize its efforts to recover funds in order to preserve the country's banking system, the Court went on to state that since Congress had not addressed the issue of FDIC's status in third party law suits statutorily, the Court was not convinced that a rule of absolute priority for the FDIC was essential to the recovery of the deposit insurance fund. The Court thus found that when the FDIC appears in a lawsuit in a "normal, commercial context," there was no reason to relieve the FDIC from the operation of state law.

In its motion, the FDIC cites case law from other jurisdictions which it asserts

support its claim that the FDIC owes no legal duty to Cherry Bekaert regarding the FDIC's management of the collateral for the loans after the FDIC assumed its receivership. One decision, *FDIC v. Renda*, 692 F.Supp. 128, 134 (D.Kan 1988), did not permit the suit based on sovereign immunity. Another decision, *FDIC v. Greenwood*, 719 F.Supp. 749, 750 (C.D.Ill.1989) held that based on public policy concerns—the public's interest in the prompt recovery of a failed bank—the FDIC did not owe a duty to the former directors of the failed banks in its collection of assets. Finally, in *Vogel v. Grissom*, No. CS 3–89–1467–D (N.D.Tex. Sept. 9, 1989), the case cited by the FDIC which most directly addresses the issue, the district court held that the FDIC acts in a discretionary manner when it disposes of assets, and thus was protected from the affirmative defense of contributory negligence.

A California district court came to a different conclusion in *FDIC v. Carter*, 701 F.Supp. 730 (C.D.Cal.1987). In *Carter*, the FDIC in its corporate capacity filed suit against the former directors of a failed bank, alleging negligence and breach of contract. Defendants filed counterclaims and affirmative defenses which alleged that the FDIC failed to minimize the bank's damages in its efforts to collect on loans. The FDIC argued that the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) barred such pleadings. The *Carter* court rejected this argument, holding that the FTCA did not apply to counterclaims in suits where the FDIC was the plaintiff. *Id.* at 733. The Court went on to hold also that when the FDIC acts to dispose the assets of the bank, these actions fall outside the public policy role of the FDIC and may serve as a basis for a counterclaim and affirmative defenses. *Id.* at 736.

Neither the *Vogel* or *Carter* decisions are binding on this Court, and it must be noted that they are distinguishable since they involve suits by the FDIC against former officials of the failed bank, rather than against third parties. However, the Court finds the reasoning in the *Carter* decision—that the corporate FDIC's disposal of assets falls outside its public policy

role—to be persuasive. This reasoning appears consistent with the two Eleventh Circuit decisions discussed above, *Harrison* and *Jenkins*. Although not addressing the precise issue before this Court, *Harrison* and *Jenkins* form the basis of the Court's view that the FDIC as plaintiff in this action is acting in a normal commercial context and should be treated no differently than any other litigant. As Cherry Bekaert argues in its memorandum, it would be permitted to assert its affirmative defense against any other party that had assumed the collateral of Park Bank. In response, the FDIC does not cite any statutory authority affording it special protection from this defense, and like the *Jenkins* court, this Court declines to speculate that Congress contemplated that negligence suits against third party defendants are a necessary part of the recovery of the insurance fund. Therefore, the Court finds that Cherry Bekaert may assert its affirmative defenses against the FDIC in this action.

■ The FDIC bases its argument for dismissal of Cherry Bekaert's affirmative defense alleging contributory negligence on the part of the former Park Bank officers on the doctrine stated in *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and its progeny. The *D'Oench* doctrine prohibits borrowers from asserting affirmative defenses such as fraud and alleged oral side agreements between the borrower and failed bank officials which do not appear on the loan documents against the FDIC when it seeks to enforce the defaulted loans. The FDIC argues that the doctrine set forth in *D'Oench* and its progeny fashions special federal rules allowing the FDIC to carry out its function of attempting to stabilize the national banking system.

The Court cannot accept the FDIC's argument that the *D'Oench* doctrine protects them in this case. First of all, as stated in the *Harrison* decision, the special protections afforded the FDIC by *D'Oench* and its progeny are limited in scope. *Harrison*, 735 F.2d at 412, n. 6. Indeed, each of the cases cited by the FDIC barred affirmative defenses by borrowers regarding al-

leged oral side agreements and fraud by the former bank officials in order to protect the FDIC as receiver in recovering the assets of the failed bank. This case involves defendants other than defaulting borrowers and defenses much different than those considered by the *D'Oench* progeny courts.

Secondly, in the Court's view the FDIC is in a different posture in this case than in the *D'Oench* progeny cases. Here, the FDIC has stepped out of its role as a bank's receiver seeking to collect on borrower's debts, and instead is acting in its corporate capacity as an assignee. As the FDIC concedes, under Florida law an assignee takes the assignment subject to any defenses the obligor could raise against the assignor. *Shirley v. Lake Butler Corporation*, 123 So.2d 267, 270 (Fla. 2d DCA 1960), and Cherry Bekaert could assert its comparative negligence defense against Park Bank, *Devco Premium Finance Co. v. North River Insurance Co.*, 450 So.2d 1216, 1220 (Fla. 1st DCA 1984), *review denied*, 458 So.2d 272 (Fla.1984). Given the Eleventh Circuit's decisions in *Harrison* and *Jenkins* which declined to afford the FDIC in its corporate capacity any special status or protections, this Court sees no reason that the FDIC in this case should be treated differently than any other assignee. Nor should Cherry Bekaert be barred from presenting evidence that other parties contributed to the FDIC's damages in an effort to reduce its own liability. *FDIC v. Renda*, 692 F.Supp. 128, 137 (D.Kan.1988).

The Court now turns to the FDIC's motion for summary judgment on Cherry Bekaert's third affirmative defense which asserts that the statute of limitations bars a portion of the FDIC's claims. The FDIC sets forth two arguments in support of its motion. First, it seeks the Court to find that the statute of limitations period provided in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) controls in this case. The FDIC cites sec. 212(a) of FIRREA, 12 U.S.C. 1821(d)(14), which states:

[T]he applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be (i) in the case of any contract claim the longer of—(I) the 6–year period on which the claim accrues; or (II) the period applicable under state law; and (ii) in the case of any tort claim, the longer of—(I) the 3–year period beginning on the date claim accrues; or (II) the period applicable under state law.

This section goes on to state that the applicable statute of limitations begins to run on either the date the FDIC was appointed receiver or the date the cause of action accrued, whichever is later. Based on this provision, and § 217(4) which states that the FDIC in its corporate capacity has all of the "rights, powers, privileges and authorities" of the FDIC as receiver, the FDIC claims that since the FDIC was appointed receiver on February 14, 1986, as a matter of law none of FDIC's tort or contract claims against Cherry Bekaert could be barred.

Cherry Bekaert raises three points in opposition to the argument that FIRREA controls this action. First, Cherry Bekaert cites the title of § 212(a) which reads: "Statute of Limitations for Actions Brought by Conservator or Receiver," as a clear indication that this section applies only to the FDIC in its capacity as receiver, and not to the FDIC in its corporate capacity, as it appears in this action. As for § 217(4), Cherry Bekaert argues that this section cannot alter the clear limitation imposed by the title of § 212(a), and that "rights, powers, etc." does not apply to a statute of limitations.

■ Secondly, Cherry Bekaert argues that even if § 212(a) is read to include the FDIC in its corporate capacity, FIRREA as a whole was not intended to be applied retroactively to pending litigation. Cherry Bekaert asserts that a review of FIRREA demonstrates that when Congress intended particular sections to be retroactive, it did so expressly. Additionally, Cherry Bekaert cites two statements made during the Congressional hearings by Representative Solomon Ortiz and Representative Henry Gonzalez, the Chairman of the House's Bank-

ing, Finance and Urban Affairs Committee, which imply that FIRREA was not intended to apply retroactively. Representative Ortiz commented during the hearings:

I seek to clarify the intent and effect of prospective application of the proposed bill. I understand this bill would redefine and augment the powers of the Federal Insurance Corporation when that Corporation serves as a receiver for a failed financial institution. The powers set forth in this bill are, in many respects, new, and there is no intent that such powers be applied to receiverships that have been established prior to the enactment of this bill.

135 Cong.Rec. H5003 (Daily Ed. August 3, 1989). When Representative Gonzalez, the sponsor of the bill, was asked about the effect of the bill on particular pending litigation (suits involving banks challenging their alleged wrongful denial of applications to leave FSLIC), he replied, "... [A]s far as I know, there is no retroactive language in any part of the bill that would have any impact one way or the other on pending litigation." 135 Cong.Rec. H2748 (Daily Ed. June 15, 1989).

The Court concludes that it need not address whether § 212(a) includes actions brought by the FDIC in its corporate capacity since it is not convinced that Congress intended § 212(a) of FIRREA to apply retroactively to pending litigation. This conclusion is supported by the statements made by the two representatives, one the sponsor of the bill, which specifically address the issue of the retroactive application of FIRREA. These statements are more indicative of Congressional intent regarding retroactivity than those of Senator Donald Riegle, presented by the FDIC in support of its motion.[1]

Alternatively, the FDIC argues that even if the Court finds that FIRREA does not apply in this case, its claims are not barred by the statute of limitations set forth in 28 U.S.C. §§ 2415–16. Section 2415 provides that contract claims filed by an agency of the United States must be filed within six years after the right of action accrues, and that tort claims must be filed within three years after accrual. For purposes of calculating the time provided in § 2415, § 2416 excludes "all periods during which facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." Thus, according to the FDIC, since it was appointed receiver of Park Bank on February 14, 1986, it could not have known of the claims until that date, and the statute of limitations for tort actions would not run until February 14, 1989, well after this action was filed.

■ Although courts considering §§ 2415–16 appear to agree that the sections apply to FDIC claims, the circuits are split as to when the FDIC's cause of action accrues. For example, the Third, and Ninth Circuits have held that under § 2416 accrual occurs at the time the FDIC is appointed receiver [2], while decisions from the 10th Circuit Court of Appeals and a district court in the D.C. Circuit support the view that the claim accrues at the time it occurred.[3] Apparently 11th Circuit

---

**1.** The FDIC cites the following statements attributed to Senator Riegle, who introduced the bill into the Senate:

[T]hese limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation, and help ensure the accountability of the persons responsible for the massive losses the Government has suffered through the failures of insured institutions. The provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods.

135 Cong.Rec. S10205 (Daily Ed. Aug. 4, 1989). The FDIC argues that the Senator's references to "losses the Government has suffered," and "claims that would otherwise have been lost," demonstrates that the section was intended to be applied retroactively.

**2.** *FDIC v. Former Officers and Directors of Metropolitan Bank*, 884 F.2d 1304 (9th Cir.1989); *FDIC v. Hinkson*, 848 F.2d 432 (3rd Cir.1988);

**3.** *FDIC v. Galloway*, 856 F.2d 112, 116 (10th Cir.1988); *United States v. Rollinson*, 629 F.Supp. 581, 583 (D.D.C.1986), *aff'd on other grounds*, 866 F.2d 1463 (D.C.Cir), *cert. denied*, —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989).

courts have not yet addressed this issue, although Cherry Bekaert has cited a former Fifth Circuit case, *United States v. Sellers*, 487 F.2d 1268, 1270 n. 1 (5th Cir. 1973) which, although not involving the FDIC, stated in a footnote that the date that a loan went into default was the date that the statute of limitations accrued, even though the government agency had not acquired the claim until a later date.

■ Even if this Court were to follow the decisions that find that the FDIC's cause of action against Cherry Bekaert accrued on the date of the receivership appointment, the Court's inquiry into this issue would not be completed. In *FDIC v. Hinkson*, 848 F.2d 432, 434 (3rd Cir.1988), one of the cases holding that an FDIC claim accrued when the FDIC was appointed receiver, the court went on to hold that if the state statute of limitations has already run on a particular claim, it is not revived by transfer of the claim to a federal agency. The *Hinkson* Court relied on the United States Supreme Court decision *Guaranty Trust Co. v. United States*, 304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938), which held that the United States does not acquire a right free of any "pre-existing infirmities" including the statute of limitations. See also *FDIC v. Former Officers and Directors of Metropolitan Bank*, 884 F.2d 1304, 1309 n. 4 (9th Cir.1989); *FDIC v. Consolidated Mortgage & Finance Corp.*, 805 F.2d 14, 17–18 n. 4 (1st Cir.1986). This holding is important in this case because Florida's statute of limitations for professional malpractice is two years. Fla.Stat.Ann. § 95.11(4)(a). Thus, if the Court adopts the *Hinkson* and *Metropolitan Bank* holdings in their entirety, any claims of professional malpractice which had expired under state law before the FDIC was appointed receiver, would not be revived by the appointment. Since the claims are not revived, they could not be transferred to the FDIC in its corporate capacity.

The FDIC attempts to distinguish the holdings of these cases by noting that the cases did not consider the impact the decisions would have on the "unique federal policies" the FDIC is attempting to carry out. One such policy cited is that the FDIC should not be subject to a state statute of limitations defense against the failed bank since it would interfere with its efforts to collect the assets to restore the Insurance Fund. In Florida in particular, the FDIC claims that a two-year statute of limitations would severely frustrate the FDIC's regulatory activities. The FDIC argues also that the Eleventh Circuit has consistently held that the FDIC is not "an ordinary assignee" that takes claims subject to all defenses available against the assignor.

The Court finds the holdings in *Hinkson* and *Metropolitan Bank* decisions persuasive in their entirety. Thus, the Court adopts the view that the statute of limitations provided in §§ 2415–16 governs the FDIC's claims in this case, and that the FDIC's claims accrued when it was appointed receiver. However, any claims which were barred by Florida's statute of limitations prior to the receivership are not revived by the receivership, and thus could not be transferred to the FDIC in its corporate capacity. As to the FDIC's assertion that this conclusion will frustrate its efforts to carry out national policy, the Court finds that application of these cases does not interfere with the FDIC's acquisition of assets in a purchase and assumption transaction, the policy consideration cited by the Eleventh Circuit in *Harrison* as justifying the special protections afforded FDIC in the *D'Oench* progeny cases.

Based on the foregoing, it is

ORDERED:

Plaintiff the FDIC's motions for summary judgment on defendants' third, fourth, and eleventh affirmative defenses (D–134, D–148) are denied, and defendant may assert these affirmative defenses in a manner consistent with the Court's discussion in this Order.

DONE AND ORDERED.