**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of Guardian Bank, N.A., Plaintiff,**

v.

**ECKERT SEAMANS CHERIN & MELLOTT, A Pennsylvania Partnership, et al., Defendants.**

**No. CV 90–0488.**

United States District Court, E.D. New York.

Dec. 14, 1990.

---

Reid & Priest, New York City (Evan Widlitz, of counsel), for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Mark H. Alcott, of counsel), for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Federal Deposit Insurance Corporation ("FDIC"), as receiver of Guardian Bank, N.A., moves, pursuant to Fed.R.Civ.P. 12(f), to strike the Twelfth and Thirteenth Affirmative or Other Defenses asserted by Eckert Seamans Cherin & Mellott ("Eckert").

The Twelfth Affirmative Defense claims a failure on the part of the FDIC and "its current counsel, to pursue claims against the OCC, the FDIC, Ginnie Mae, and the Federal National Mortgage Association ("Fannie Mae") for the losses alleged in the complaint ..."

The Thirteenth Affirmative Defense states:

> By reason (among others) of its conflict of interest in acting as receiver of a Bank which as a regulator it hoped to close, plaintiff FDIC has failed to marshall all the assets of the receivership.

The amended complaint recites the appointment of FDIC as receiver of the Guardian Bank, N.A. ("bank") on June 21, 1989, by the Office of the Comptroller of the Currency upon the determination of the insolvency of the bank. It alleges that on or about December 14, 1984, the bank retained defendant Robert C. Zimmer, then a member of the law firm of Lane & Edsen, as counsel; that subsequently, on or before September 30, 1986, Zimmer left Lane & Edsen and became a member of the Eckert firm; that Eckert became and remained as general counsel to the bank through the date of closing the bank on June 21, 1989.

The amended complaint alleges claims based on a breach of fiduciary duty, malpractice, fraud, and negligent misrepresentation. The basis for the claims is that while acting as counsel for the bank and its subsidiaries "Eckert was faced with a significant conflict between the interests of the Bank and the desire of Louis B. Bernstein ("Bernstein"), a director of the Bank and the owner of approximately 85% of the Bank's stock, to retain control of the Bank and to continue to use it as a source of funding for The New York Guardian Mortgagee Corporation ("NYGMC"), the Bank's mortgage servicing subsidiary, regardless of the harmful effects on the Bank. Eckert, while engaged as general counsel to the Bank, represented Bernstein and other persons and entities with interests adverse to the Bank. Eckert facilitated and advanced Bernstein's personal goals by, *inter alia,* structuring transactions designed to provide Bernstein with access to millions of dollars in cash for his personal use, free from the scrutiny of bank examiners." (¶ 2).

## DISCUSSION

*Motion to Strike Pursuant to Rule 12(f)*

■ A motion to strike an affirmative defense pursuant to Rule 12(f) is not favored and will be granted only if it clearly appears that the plaintiff " 'would succeed despite any state of facts which could be proved in support of the defense.' " *William Z. Salcer, etc. v. Envicon Equities,* 744 F.2d 935, 939 (2d Cir.1984), quoting *Durham Industries, Inc. v. North River Insurance Co.,* 482 F.Supp. 910, 913 (S.D. N.Y.1979), quoting *Lehmann Trading Corp. v. J. & H. Stolow, Inc.,* 184 F.Supp. 21, 22–23 (S.D.N.Y.1960). Where the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim. *Federal Deposit Ins. Corp. v. Berry,* 659 F.Supp. 1475, 1478–79 (E.D.Tenn.1987); *Anchor Hocking Corp. v. Jacksonville Elec. Authority,* 419 F.Supp. 992, 1000 (M.D.Fla.1976). The extensive pre-trial discovery available to Eckert in these affirmative defenses could take many months. The extra cost and the delay in bringing the case to trial is substantial.

*The Dual Capacity of the FDIC*

The Federal Deposit Insurance Act (the "Act"), 12 U.S.C. § 1811 *et seq.,* provided that the FDIC "shall insure, as hereinafter provided, the deposits of all banks ..." *Id.* at § 1811. FDIC acts in its corporate capacity as an insurer under the provisions contained in section 1821 (Permanent Insurance Fund). The Act also authorized the FDIC to act as a receiver of insolvent banks pursuant to section 1822. The purpose of creating the FDIC was to lend stability and confidence in the national banking system, first by providing depositors with insurance for payment in the event of a bank's insolvency, and second by taking custody of a failed bank's assets through FDIC's authority as a receiver of the failed bank. Congress thus authorized the FDIC to act in its corporate capacity as insurer and in a separate capacity as a receiver of a failed bank. *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh'g denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982); *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3rd Cir.1979).

In *Federal Deposit Ins. Corp. v. Jenkins,* 888 F.2d 1537, 1539–40 (11th Cir. 1989), the court discussed the manner in which the FDIC is authorized to deal with the obligations of the FDIC in its corporate capacity as insurer and the alternative as a receiver. The court stated:

When a bank fails, the FDIC will generally be appointed as a receiver. 12 U.S.C. section 1821(c), (e) (1982). The FDIC will then proceed to determine the future course of the failed bank. The FDIC has two alternatives: (1) a "deposit payoff" or liquidation where the bank is closed and the FDIC pays the depositors up to $100,000 per account limit out of the deposit insurance fund, *see* 12 U.S.C. section 1821(d) (1982); or (2) a "purchase and assumption" transaction where the FDIC arranges for the sale of the failed bank's assets and deposit liabilities to another solvent bank. *See* 12 U.S.C. section 1823(c)(2), (c)(4)(A) (1982). The failed bank reopens in the solvent bank's name, and depositors are benefited by

uninterrupted banking service. *See Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.1982).

\* \* \* \* \* \*

The assuming bank has the option to return to the FDIC in its receiver capacity those assets which the assuming bank finds to be of limited value. *Id.* The FDIC in its "corporate" capacity then purchases the returned assets from the receiver FDIC, which transfers the purchase price of the returned assets to the assuming bank. *Id.* The corporate FDIC attempts to collect on the returned assets, and proceeds from these collections are applied to replenish the insurance fund.

In *Gunter,* 674 F.2d at 865, the court observed:

A purchase and assumption involves three entities: the receiver of the failed bank, the purchasing bank, and the FDIC as insuror. In most cases, the FDIC is appointed receiver by the appropriate banking authority and thus acts in two separate capacities: as receiver and as corporate insuror. *See FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978) (footnote omitted).

FDIC may act simultaneously in both capacities, as it does when it assigns commercial paper as a receiver to the FDIC as an insurance corporation. *Federal Deposit Ins. Corp. v. Godshall,* 558 F.2d 220, 223 (4th Cir.1977).

*The Affirmative Defenses*

It appears that the Twelfth Affirmative Defense asserts FDIC's failure to mitigate based on its failure to prosecute claims against the named governmental agencies after the authority of NYGMC to service Ginnie Mae and Fannie Mae mortgages was terminated; a failure that allegedly deprived the bank of the income derived therefrom. The basis of FDIC's claim against Eckert for losses due to Eckert's alleged participation in a fraudulent scheme, resulting in Bernstein's appropriation of millions of dollars of the bank's funds, is unrelated to a claim of the im-

proper exercise of the named governmental agencies' authority. Further, we find that the assertion of any claim based on FDIC's conduct in its corporate capacity may not be asserted against FDIC as a receiver of the bank. *In re F & T Contractors, Inc.,* 718 F.2d 171 (6th Cir.1983).

The availability of the affirmative defense of failure to mitigate damages has not been decided in this Circuit Court of Appeals. Numerous district court opinions persuade this court that the defense is unavailable against the FDIC as receiver. One court, in *Federal Sav. and Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649, 663 (E.D.Tenn.1989),[1] states the public policy reasons for denying affirmative offenses as follows:

> In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered. Suits by the FSLIC as a receiver to recover assets, or to recover damages for wrongdoing, should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second guessing in actions to recover damages from wrong-doing directors and officers. If there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be allowed to set up as a defense a claim that would permit the

detailed examination of the FSLIC's action as a receiver.

In striking the affirmative defense of failure to mitigate damages, the court held:

> Whether a duty is owed by the FSLIC to the defendants in this case or not, the policy against having the public bear any losses due to errors in judgment by the FSLIC as a receiver of a failed institution still applies, and the court's concern that the jury could be distracted by excessive evidence concerning the discretionary decisions by the FSLIC as receiver of Knox [the failed savings and loan association] will exist as long as the mitigation defense remains in this case.

*Id.* at 664.

For cases to the same effect, with FDIC acting in its corporate capacity, see the following: *Federal Deposit Ins. Corp. v. Baker,* 739 F.Supp. 1401 (C.D.Cal.1990) (affirmative defenses, *inter alia,* of failure to mitigate, contributory negligence, and restrictions and limitations imposed on bank by governmental agencies, stricken); *Federal Deposit Ins. Corp. v. Greenwood,* 719 F.Supp. 749 (C.D.Ill.1989) (court excluded affirmative defense that "as to certain loans there existed sources of repayment"); *Federal Deposit Ins. Corp. v. Carlson,* 698 F.Supp. 178 (D.Minn.1988) (defense of failure to maximize recovery on bad loans rejected); *Federal Deposit Ins. Corp. v. Butcher,* 660 F.Supp. 1274 (E.D.Tenn.1987) (affirmative defenses, of failure to mitigate, contribution, negligence and estoppel, stricken); *Federal Deposit Ins. Corp. v. Dempster,* 637 F.Supp. 362 (E.D.Tenn.1986) (affirmative defenses of failure to mitigate, contributory negligence and estoppel, stricken).

In *Federal Deposit Ins. Corp. v. Harrison,* 735 F.2d 408 (11th Cir.1984), however, the court held "that FDIC is subject to a claim of equitable estoppel when it acts in its corporate capacity to collect a debt acquired from an insolvent bank ..."[2] To

---

1. The Federal Savings and Loan Insurance Corporation acts as a regulator in its corporate capacity and as a receiver of failed savings and loan associations, similar to the dual capacity of the FDIC. *Federal Sav. and Loan Ins. Corp. v. Burdette,* 696 F.Supp. 1183, 1188 (E.D.Tenn. 1988).

2. In *Harrison,* the court stated:

   This is not to say that FDIC should be treated the same as a privately owned bank in all circumstances. [After discussing the "special protection" afforded the FDIC] when necessary to further the policy of promoting the

the same effect, *Federal Deposit Ins. Corp. v. Cherry Bekaert & Holland*, 742 F.Supp. 612 (M.D.Fla.1990), allowed the affirmative defenses of failure to mitigate damages, and comparative and/or contributory negligence. The court held "Here, the FDIC has stepped out of its role as a bank's receiver seeking to collect on borrower's debts, and instead is acting in its corporate capacity as an assignee. As the FDIC concedes, under Florida law an assignee takes the assignment subject to any defenses the obligor could raise against the assignor." *Id.* at 615. *See also Federal Deposit Ins. Corp. v. Carter*, 701 F.Supp. 730 (C.D.Cal.1987) (FDIC in its corporate capacity asserts claims against former officers and directors of the failed bank for negligence and breach of fiduciary duty; affirmative defense claiming that FDIC's loss was the fault of FDIC, not defendants, survives motion to strike).[3]

We are cited to no compelling authority permitting the assertion of an affirmative defense of failure to mitigate damages in answer to a claim of negligence, breach of fiduciary relationship and fraud on the part of officers, directors, employees.

We turn to briefly discuss the Thirteenth Affirmative Defense alleging a conflict of interest in FDIC's dual role as receiver and regulator. "Section 1823(d) ... clearly contemplates transactions between the FDIC as receiver and FDIC as corporate insuror, stating 'receivers or liquidators of insured banks ... shall be entitled to offer the assets of such banks for sale to the Corporation' ... Finally, we note that other federal courts have recognized that under the statute the FDIC may act in a dual capacity [citations omitted]. In *Ashley* and *Godshall*, moreover, the courts held that transactions between the FDIC as receiver and FDIC as corporate insurer were bona fide transactions [citations omitted]." *Gunter v. Hutcheson*, 674 F.2d at 873–74.

ORDER

The motion to strike the Twelfth Affirmative Defense and the Thirteenth Affirmative Defense is granted, and it is

SO ORDERED.

---

stability of the nation's banking system by facilitating FDIC's smooth acquisition of assets in a purchase and assumption transaction. [The court noted s]uch protections are not necessary where, as here, the conduct of the FDIC itself gave rise to the defense of estoppel after the Corporation had acquired the asset. *Id.* at 412–13 n. 6.

**3.** In *Federal Deposit Ins. Corp. v. Baker*, 739 F.Supp. 1401, 1407 (C.D.Cal.1990) Judge Stotler refused to follow *Carter*.