**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Summer GLADSTONE, Anthony F. Delapa, A. James Derderian, Alfred Gladstone, Charles H. Turner, III, David Ean Coleridge, an interested Underwriter at Lloyd's London, individually, and on behalf of all the other interested underwriters at Lloyd's London, who have subscribed to Savings and Loan Blanket Bond No. 834/FB890701, Defendants and Third Party Plaintiffs,**

v.

**Sumner Gladstone, Third Party Defendant and Fourth Party Plaintiff,**

v.

**Anthony F. Delapa and A. James Derderian, Fourth Party Defendants.**

**Civil Action No. 93–11255–NG.**

United States District Court, D. Massachusetts.

March 11, 1999.

---

Christine M. Roach, Kern, Hagerty, Roach & Carpenter, Boston, MA, Kevin F. Moloney, Barren & Stadfeld, Boston, MA, Alan L. Spear, Federal Deposit Ins. Corp., Receivership Operations and Litigation, Washington, DC, for Resolution Trust Corp.

Richard J. Grahn, Looney & Grossman, Boston, MA, Edward T. Robinson, Michael Consentino, Seegel & Lipshutz, Wellesley, MA, for Sumner Gladstone.

Richard J. Grahn, Looney & Grossman, Boston, MA, John C. Ottenberg, Miller, Ottenberg & Dunkless, Boston, MA, John C. Englander, Goodwin, Procter & Hoar, Boston, MA, George Lemelman, Lemelman & Lemelman, Boston, MA, for Anthony F. Delapa.

Richard J. Grahn, Stewart F. Grossman, Elizabeth M. Adler, Looney & Grossman, Boston, MA, for A. James Derderian.

Richard J. Grahn, Stewart F. Grossman, Looney & Grossman, Boston, MA, Edward T. Robinson, Michael Consentino, Seegel & Lipshutz, Wellesley, MA, for Alfred L. Gladstone.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

Plaintiff Federal Deposit Insurance Corporation ("FDIC") submits two Motions to Dismiss Affirmative Defenses: one a Motion to Strike Affirmative Defenses Which Are *Not* Based upon the Conduct of Federal Regulatory Agencies (docket # 304), and one a Motion to Strike Affirmative Defenses Which *Are* Based upon the Conduct of Federal Regulatory Agencies (docket # 306).

Specifically, in its Motion to Strike Affirmative Defenses Which *Are* Based on the Conduct of Federal Regulatory Agencies, the FDIC moves to strike the following affirmative defenses of Anthony F. Delapa ("Delapa") and A. James Derderian ("Derderian") (collectively "Defendants")[1]:

(A) Laches (Delapa 8, Derderian 5)[2];

(B) Contributory or comparative negligence (Delapa 5, Derderian 3);

(C) Estoppel (Delapa 7, Derderian 10);

(D) Failure to mitigate damages (Delapa 3, Derderian 4);

(E) Defendant's conduct not a proximate cause of plaintiff's damages (Delapa 6, Derderian 15);

(F) Breach of contract (Delapa 15);

(G) Waiver (Delapa 10, Derderian 9).

---

1. Defendants Charles Turner and Alfred Gladstone have settled their cases with the FDIC, and thus their defenses are now moot. The case with regard to Sumner Gladstone is stayed while he files for bankruptcy.

2. The number indicates which numbered defense it is for that particular defendant.

(H) Ratification by Home Federal Savings Bank board or shareholders (Delapa 11, Derderian 12).[3]

In its Motion to Strike Affirmative Defenses Which Are *Not* Based on the Conduct of Federal Regulatory Agencies, the FDIC moves to strike the following affirmative defenses:

(A) Statute of limitations (Delapa 4, Derderian 6);

(B) FDIC's state and federal common law claims are preempted by 12 U.S.C. § 1821(k) (Delapa 14, Derderian 26)

These motions are granted in part and denied in part.[4] Specifically, the FDIC's Motion to Strike Affirmative Defenses Which *Are* Based on the Conduct of Federal Agencies (# 306) is **DENIED** with the exception of the Motion to Strike the Defense of Laches, which is **GRANTED.** The FDIC's Motion to Strike Affirmative Defenses Which Are *Not* Based on the Conduct of Federal Agencies (# 304) is **GRANTED.**

## I. *FACTUAL BACKGROUND*[5]

Defendants Derderian, Delapa and Sumner Gladstone formed American Heritage Bancorp ("AHB") for the purpose of acquiring Home Federal Savings Bank ("HFSB") in 1985. On June 14, 1985, HFSB entered into an agreement under which it became a wholly owned subsidiary of AHB. At the time of the transaction, however, HFSB was failing its federal regulatory capital requirements. Accordingly, the Federal Savings and Loan Insurance Corporation ("FSLIC") conditioned its approval of the transaction on AHB's (1) infusion of capital into HFSB, and (2) agreement to maintain HFSB's net worth at a certain level.

On June 9, 1986, Sumner Gladstone, Delapa and Derderian were appointed to HFSB's Board of Directors. Alfred Gladstone joined the Board as a director on June 25, 1987. And in June 1987, Charles H. Turner, III ("Turner") became HFSB's chief loan officer.

On June 7, 1990, the Resolution Trust Corporation ("RTC") was appointed by the office of Thrift Supervision ("OTS") as receiver, and on June 8, 1990, the RTC took possession of HFSB's property and assets. The FDIC is the statutory successor in interest to the RTC in this litigation.

FDIC alleges that the bank failed because the Defendants breached their duty of care by failing to adhere (1) to HFSB's internal lending policies, and (2) to the requirements of the Federal Home Loan Bank Board's Memorandum R41c prior to approving nineteen loans which eventually defaulted. The FDIC alleges that these failures violated various statutory, contractual and common-law duties owed to HFSB and its depositors and shareholders. The Defendants submit a variety of affirmative defenses against their liability for the bank's failure.

## II. *STANDARD FOR MOTION TO STRIKE*

▬ Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense." Motions to strike

---

3. Derderian has withdrawn the following defenses: Plaintiff lacks standing to maintain action under 12 U.S.C. § 1821(k) because plaintiff is not the real party in interest (# 7); Setoff/offset, recoupment or contribution (# 11); FDIC's predecessor, Resolution Trust Corporations's ("RTC") is not subrogated to the rights of Home Federal Savings Bank's ("HFSB") depositors (# 13); RTC's acquisition of HFSB was defective (# 16); Office of Thrift Supervision's failure to remove HFSB directors under 12 U.S.C. § 1818(e) (# 17); RTC's waste of receivership assets (# 19); as-

sumption of risk (# 22); unconstitutionality of 12 U.S.C. § 1821(k) (# 23); failure to pay OTS to properly examine HFSB (# 24).

4. During a previous proceeding, the Court misspoke, suggesting that the motions were all denied.

5. This background is given at greater length in *Resolution Trust Corporation v. Gladstone*, 895 F.Supp. 356 (D.Mass.1995).

are generally disfavored, "and will be granted only if it clearly appears that the plaintiff would succeed despite any state of facts which could be proved in support of defense." *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 23 (E.D.N.Y.1990). Nonetheless, it is useful to consider the legal sufficiency of defenses to clarify the issues and perhaps narrow them.

Delapa and Derderian object that the FDIC's motions to dismiss are not timely, coming approximately five years after the affirmative defenses were set forth in their defenses. They claim that this tardiness will be of great prejudice to them because they have premised their trial strategy and preparation on the availability of these defenses. As described below, to all intents and purposes, these rulings will not materially affect the evidence submitted.

## III. AFFIRMATIVE DEFENSES BASED ON CONDUCT OF FEDERAL AGENCIES

The FDIC presents a general argument against recognizing affirmative defenses based on conduct of federal agencies, and a number of specific objections to specific affirmative defenses. I will handle these in turn.

### A. General Argument

#### 1. Federal Common Law

For the past several years, there has been a general consensus amongst courts that defendant tortfeasors in failed bank litigation cannot limit their liability by attacking the conduct of the federal banking agencies. As a matter of federal common law, it was held that the FDIC (along with its predecessor RTC) is insulated from these sorts of affirmative defenses for the following three reasons: (1) the FDIC owes no duty to the officers or directors of failed institutions; (2) public policy is against making the public pay for errors of judgment of FDIC officers attempting to save a failed institution, when the failure was caused by the wrongdoing of the de-

fendants; and, (3) the FDIC's conduct in fulfilling its mandate involves discretionary decisions that should not be subjected to judicial second-guessing. The position that the FDIC is insulated from affirmative defenses attacking its conduct was adopted by all three circuits that had examined the question and by the majority of the district courts. *See FDIC v. Oldenburg*, 38 F.3d 1119, 1121–22 (10th Cir. 1994); *FDIC v. Mijalis*, 15 F.3d 1314, 1323–24 (5th Cir.1994); *FDIC v. Bierman*, 2 F.3d 1424, 1438–41 (7th Cir.1993). *See also* cases cited in *Oldenburg*, 38 F.3d at 1121. *But see FDIC. v. Ashley* 749 F.Supp. 1065, 1068–69 (D.Kan.1990); *FDIC v. Niblo*, 821 F.Supp. 441, 451–52 (N.D.Tex.1993). The majority position derives from *Federal Savings and Loan Ins. Corp. v. Roy* 1988 WL 96570, at *1 (D.Md. June 28, 1988).

Then, in 1994, the Supreme Court decided *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The FDIC, acting as receiver for a failed bank, sued the law firm of O'Melveny & Myers, alleging professional negligence and breach of fiduciary duty in its representation of the bank. The Ninth Circuit held that federal common law governed these questions—whether knowledge of corporate officers acting against the corporation's interest will be imputed to the corporation, and whether such knowledge can be used as the basis of an estoppel defense against the FDIC as receiver. The Supreme Court reversed in an unanimous opinion, holding that with rare exceptions, "there is no federal general common law." 512 U.S. at 83, 114 S.Ct. 2048 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Specifically, it held that except as provided for by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") 12 U.S.C. § 1821(d)(2)(A)(i), state law governs the "FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors

that has already occurred." 512 U.S. at 88, 114 S.Ct. 2048.

■ Since *O'Melveny,* many courts have reconsidered whether the FDIC can rely on federal common law insulating it from affirmative defenses attacking its own conduct. In this district, for example, the court in *FDIC v. Gaziano,* No. 96–11361–MEL (D.Mass. January 29, 1998), held that *O'Melveny* makes it clear that "FIRREA 'places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise.'" *Id.,* slip op. at 7 (citing *O'Melveny,* 512 U.S. at 86–87, 114 S.Ct. 2048). Other courts, however, have distinguished cases in which the FDIC's *own* conduct is at issue from the situation in *O'Melveny,* in which the prior conduct of *private actors* was at issue. These courts have held that federal common law survives where the FDIC's own conduct is at issue because of the potential for "significant conflict" between the federal interests at stake and state law allowing for affirmative defenses focusing on the FDIC's behavior. *See e.g. FDIC v. Healey,* 991 F.Supp. 53, 61 (D.Conn.1998) ("the potential for a 'significant conflict' exists in this case with respect to the affirmative defenses that defendants seek to assert."). The First Circuit has not addressed the issue; neither has any other circuit addressed it directly.[6]

Reconsidering these issues in the light of recent case law, I conclude that *Gaziano* has the better view in this debate.[7] The *O'Melveny* Court held that the idea that FIRREA can be supplemented or modified by federal common law "is demolished by those provisions of FIRREA which specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver.... *Inclusio unius, exclusio alterius.*" 512 U.S. at 86, 114 S.Ct. 2048 (examples from FIRREA omitted). The Court went on to say that "[t]o create additional federal common-law exceptions is not to 'supplement' this scheme, but to alter it." This language, and the generally disparaging tone directed at the idea of federal common-law—referring to cases in which judicial creation of a federal rule of decision is warranted as "extraordinary," *id.* at 89, 114 S.Ct. 2048—suggest that when the FDIC acts as a receiver, it must "work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.* at 87, 114 S.Ct. 2048.[8]

■ To be sure, the Court recognizes that there are some "few and restricted" cases in which judicial creation of a special federal rule would be justified. *Id.* at 87, 114 S.Ct. 2048. As noted above, these

6. The Tenth Circuit was at least aware of *O'Melveny* at the time it wrote its opinion in *Oldenburg;* that same panel had cited *O'Melveny* in an earlier decision: *FDIC v. Oldenburg,* 34 F.3d 1529, 1538 (10th Cir.1994).

7. My original decision in *Resolution Trust Corporation v. Gladstone, supra* note 5, was inconsistent with, and therefore superceded by, the Supreme Court's decision in *O'Melveny.*

8. The FDIC argues that FIRREA "should not be read as abrogating the long established federal common law rule protecting FDIC from affirmative defenses which seek to put the federal banking agencies on trial." It bases this argument on the claim that statutes invading the common law are to be read with a presumption favoring retention of existing common law unless a statutory purpose to the contrary is evident. But there is a significant difference between the *D'Oench* doctrine upheld in *Motorcity of Jacksonville v. Southeast Bank N.A.,* 120 F.3d 1140, 1143 (11th Cir. 1997) (relied on by the FDIC), and the freedom from affirmative defenses based on FDIC action. The *D'Oench* doctrine was articulated by the Supreme Court in 1942; the doctrine the FDIC relies on here was at most the majority rule in the early 1990's, growing as it has from an unpublished district court opinion in 1988. As the Court in *O'Melveny* said: "[W]e see no reason why [the federal common law, if there is any on an issue,] would necessarily conform to that 'independently ... adopted by most jurisdictions.'" 512 U.S. at 79, 114 S.Ct. 2048.

cases are "limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *Id.* I must, therefore, first address the question of whether the federal common law rule, that the FDIC is insulated from affirmative defenses based on its own actions, is necessary to avoid a significant conflict between some federal policy or interest and the use of state law. Given the disfavor in which federal common law is now held, I will only find such a conflict if it is clearly significant.

As noted above, the common law rule has been grounded on three federal policies: (1) FDIC's lack of duty "to those whose negligence has brought financial institutions to the brink of disaster," *Bierman,* 2 F.3d at 1438 (quoting *Roy* 1988 WL 96570 at *4); (2) public policy against making the public "bear the possible errors of judgment by the [FDIC] as receiver rather than the persons found to be guilty of wrongdoing" *Id.* at 1439; and, (3) the sovereign prerogative of engaging in discretionary activity free from "judicial second guessing," *Id.* at 1441 (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

### a. *"No duty" Argument*

█ The "no duty" argument rests on a mistaken premise. A plaintiff's duty to mitigate damages is not, literally speaking, a duty to any other party. "It has been suggested that the person wronged should not be spoken of as under a 'duty' to avoid damage, but rather a 'disability' to recover for avoidable loss." Charles McCormack, *Handbook on the Law of Damages* § 33, at 128 (1935). As the court in *Niblo* said, "the conduct of the FDIC after assuming

control of a failed bank's assets and in seeking to collect or work out bad loans must not be such that the FDIC causes losses to the failed institution which could have been avoided, either by diligent collection efforts, diligent and proper marshaling of or proceeding against valuable collateral, or otherwise." 821 F.Supp. at 455.

Of course, to the extent that the FDIC had to choose between a number of legitimate competing goals in deciding what to do, losses that result should not be considered "avoidable." [9] *Bierman,* for example, stresses that "when the FDIC acts to replenish the insurance fund through the disposition of assets of the failed bank, including the right of action against the officers and directors, it has no duty first to mitigate the damages attributed to those individuals by seeking other, and perhaps less sure, avenues of relief." 2 F.3d at 1439–40.

This is correct, as far as it goes. But the FDIC's freedom to choose a more certain avenue of relief over a more risky but probably more lucrative avenue of relief does not mean that it is also free to choose an alternative that is *both* less certain and probably less lucrative. As Judge Lasker said, "the duties at issue here—the duty to dispose of assets according to FIRREA's objectives, and the state-law duties not to act negligently in so doing and to mitigate damages—are distinct but compatible." *Gaziano,* slip op. at 16 (contrasting these compatible duties with those in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 509, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), in which a manufacturer of helicopters was faced with directly conflicting duties: a federal contract involving

9. By statute, the FDIC as a receiver engaging in the disposition of assets has to "conduct its operations in a manner which—
 (i) maximizes the net present value return from the sale or disposition of such assets;
 (ii) minimizes the amount of any loss realized in the resolution of cases;
 (iii) ensures adequate competition and fair and consistent treatment of offerors;

 (iv) prohibits discrimination on the basis of race, sex, or ethnic groups in the solicitation and consideration of offers; and
 (v) maximizes the preservation of the availability and affordability of residential real property for low and moderate-income individuals."
12 U.S.C. § 1821(d)(13)(E)(1–v).

certain design specifications, and a state liability suit for an alleged defect in that same design).

### b. Public Policy

The public policy argument, that those "guilty" of wrongdoing, rather than the public, should bear the possible errors of judgment by the [FDIC] as receiver, is also problematic. This policy amounts to nothing more than a policy of letting the FDIC win regardless of the facts. As the Court in *O'Melveny* said, "there is no federal policy that the fund [i.e. FDIC] should always win." 512 U.S. at 88, 114 S.Ct. 2048.

### c. Judicial Second Guessing

The most serious of the three federal interests is the FDIC's interest in exercising its discretion without judicial second-guessing. Drawing an analogy from the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, which holds that an agency such as the FDIC is protected by sovereign immunity against "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency," 28 U.S.C. § 2680(a), the FDIC argues that indirect attacks on the same exercise of discretion through affirmative defenses cannot be accepted. In other words, it argues that affirmative defenses, challenging and subjecting to judicial scrutiny the discretionary choices of the FDIC, are incompatible with its statutory discretion. *See United States v. Gaubert*, 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

■ Delapa and Derderian point out, however, that there are significant differences between suing the FDIC and asserting affirmative defenses against the FDIC. The FTCA only limits suits against the Government; it does not preclude state law affirmative defenses when the Government brings state law claims. *See e.g. United States v. Forma*, 42 F.3d 759, 765 (2d Cir.1994) ("a party sued by the United States may recoup damages . . . so as to reduce or defeat the government's claim . . . though no affirmative judgment . . . can be rendered against the United States.") (quoting from *In Re Greenstreet, Inc.*, 209 F.2d 660, 663 (7th Cir.1954)); *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 372–73 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979) (The FDIC waived its sovereign immunity with respect to "matters in recoupment arising out of the same transaction or occurrence which is the subject matter of the suit, to the extent of defeating the [FDIC's] claim."); *United States v. Longo*, 464 F.2d 913, 915 (8th Cir.1972) ("The Government by commencing the foreclosure action has doubtless precluded itself from raising sovereign immunity as a bar to any appropriate defense to its action.").

The court in *Gaziano* summarized the point nicely:

It is one thing to say, as the FTCA does, that no one is entitled to damages based on the FDIC's negligence, but quite another to conclude from this, as the FDIC tries to do, that some may be held liable for damages which could have been avoided but for the FDIC's negligence.

Slip op. at 18.

The FDIC is right that allowing affirmative defenses based on its conduct will allow judicial second-guessing of its choices, which is disfavored under federal common law. But it is not sufficiently clear that that value—freedom from judicial second-guessing—is in "substantial conflict" with state law within the meaning of *O'Melveny*. If the FDIC's actions were truly within the range of its discretionary functions, then its behavior will be immune from attack by any affirmative defenses. But if its behavior did not serve any of its statutory goals, its negligence cannot be allowed to increase the burden carried by the defendants.

### 2. State Common Law

■ The FDIC argues that even if there is no federal common law insulating

it from affirmative defenses directed at its conduct, Massachusetts common law would give them the same protection. It acknowledges that there are no Massachusetts cases directly on point, but it reasons that the Supreme Judicial Court ("SJC") would establish the same rules for litigation brought by the FDIC as those established by the majority of federal courts.

Delapa and Derderian point out that it is beyond doubt that the affirmative defenses they seek to employ are available in response to the type of claims brought by the FDIC, and that the FDIC's argument is purely conjectural. Moreover, the Supreme Court's determination in *O'Melveny*, that FIRREA is comprehensive and detailed legislation which requires no supplementation, undercuts the FDIC's argument that the SJC's respect for federal banking law would lead it to supplement FIRREA with exceptions to its normal tort laws.

This issue has already been well discussed by the court in *Gaziano,* which I quote here at length.

> Congress has created substantial protections for the FDIC, and it seems highly unlikely that the SJC would alter the balance struck in FIRREA by creating additional protections for the FDIC. Nor are the policy concerns the FDIC relies on so clearly one-sided. While it may seem unfair for the public to bear the risks of errors of judgment made by the FDIC, it also seems unjust to allow the FDIC to hold negligent directors and officers responsible for all losses of the institution, even losses which could have been recouped in other ways. Accepting the FDIC's argument would absolve it of any obligation of seeking to collect on notes in default before going after the directors and officers of an institution, whose benefit from the loan, if any, is certainly less direct than that of the borrower. *See Niblo,* 821 F.Supp. at 461 ("[T]he FDIC's conduct in collecting the assets of the failed bank ... should not be immune from examination inas-

> much as the FDIC should not conduct its business to occasion losses upon the Defendants which could have been avoided by using an ordinary degree of prudence.") .... Given the fact that policy arguments can be made on both sides, it seems most suitable to allow the traditional principles of tort law to strike the appropriate balance. Sufficient reasons for disturbing that balance do not exist here.

Slip op. at 20–21.

■ The FDIC also argues that the SJC is likely to read the Massachusetts Tort Claims Act ("MTCA") to show the same kind of respect for discretionary decisions of agencies, including the FDIC, as the federal law shows under the FTCA. Even so, Delapa and Derderian point out that the MTCA, like the FTCA, applies only to prevent suits against the government and has no application to assertion of defenses in suits brought by the government. The FDIC has not referred me to any Massachusetts cases even suggesting that agencies suing to recover money are insulated from affirmative defenses that would be available against any other plaintiff.

Therefore, I conclude that there is no sound reason, based on either state or federal common law, for striking Defendants' various affirmative defenses based on the actions of the FDIC.

## B. *Specific Defenses*

### 1. *Laches*

The FDIC claims that laches is unavailable to Delapa and Derderian both under federal and state law. Regarding federal law, the FDIC cites *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986) for the proposition that "the defense of laches is not applicable to actions brought by the FDIC in its corporate capacity." The problem is that this case involves the FDIC as receiver, not as corporation. There once was a time when it was clear that the United States is not "subject to

the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). But exceptions have been found to this rule. *See e.g. Clearfield Trust Co. v. United States*, 318 U.S. 363, 369, 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (laches may be asserted against the United States as drawee of commercial paper for failure to give prompt notice of forgery); *RTC v. Vanderweele*, 833 F.Supp. 1383 (N.D.Ind. 1993) (citing cases showing that the Seventh Circuit, following Supreme Court dicta, has found the doctrine of laches applicable to suits by government agencies).

■ If a defense is not clearly inadequate as a matter of law, it would be inappropriate to strike it. *See FDIC v. Pelletreau & Pelletreau*, 965 F.Supp. 381, 390 (E.D.N.Y.1997) (refusing to strike various affirmative defenses, including laches, given the uncertainty in the law created by *O'Melveny*); *RTC v. Gregor*, 1995 WL 931093, at *4 (E.D.N.Y.1995) ("Because of the uncertainty of the authority, the viability of laches and estoppel/waiver defenses ... is an open and disputed question of law that the Court declines to decide on this motion."). *See also Eckert*, 754 F.Supp. at 23.

■ To the extent the FDIC rests its arguments on Massachusetts law, it is on firmer ground. Massachusetts law is clear that "[t]he defense of laches is not available to the defendants where the proceeding is brought by an authorized public agency to enforce the law of the Commonwealth." *Board of Health of Holbrook v. Nelson*, 351 Mass. 17, 217 N.E.2d 777 (1966) (citing *Town of Lincoln v. Giles*, 317 Mass. 185, 57 N.E.2d 554 (1944)). There can be no doubt that the protection Massachusetts provides to public agencies is not meant to be limited merely to agencies enforcing the law of the Commonwealth. Therefore, FDIC's Motion to Strike the Defense of Laches is **GRANTED.**

### 2. *Equitable Estoppel*

■ The FDIC's argument here is purely a federal one, and it is weaker than its argument with regard to laches. The Supreme Court suggests that there might be cases "in which the public interest in ensuring that the Government can enforce its law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In addition, the First Circuit has expressly declined to address "whether the FDIC acting in its capacity as receiver may be subject to claims of equitable estoppel." *Roldan Fonseca*, 795 F.2d at 1108 n. 6. Because Defendants' ability to make use of an estoppel defense is a fact intensive question, it would be inappropriate to strike the defense at this early stage. Though it should be pointed out that "the Government may not be estopped on the same terms as any other litigant." *Heckler*, 467 U.S. at 60, 104 S.Ct. 2218.

In the alternative, the FDIC argues that if equitable estoppel is available against it or the RTC, the FDIC can be estopped only by its own or RTC's conduct as a receiver, not by its or RTC's conduct as a corporation, or by the conduct of any other governmental agency. The First Circuit has adopted this position under the name of the "separate capacities" doctrine. *Howell v. FDIC*, 986 F.2d 569, 574 (1st Cir.1993). The question of whether the FDIC in its separate roles counts as a separate entity is appropriately a question of federal law, therefore I adopt this doctrine as undisturbed by *O'Melveny*. With that qualification, the FDIC's Motion to Strike the Defense of Equitable Estoppel is **DENIED.**

### 3. *Ratification*

Citing *FDIC v. White*, 828 F.Supp. 304, 311 (D.N.J.1993), the FDIC claims that defense of ratification must be struck.

*White* lists two reasons: (1) the separate capacities doctrine, and (2) ratification is a form of an estoppel defense. As just noted, the second reason cannot be sufficient ground to strike the defense. The first reason is relevant only to how the defense is applied. Therefore, with the same qualifications as were applied to estoppel, the FDIC's Motion to Strike the Defense of Ratification is **DENIED.**

#### 4. *Lack of Proximate Causation*

 The FDIC claims that defenses asserting lack of proximate causation or that all or part of HFSB's damages were proximately caused by persons or events beyond Defendants' control should be striken. The FDIC's argument is simply that causation is an element of FDIC's *prima facie* case, not an affirmative defense. *See In re Rawson Food Service, Inc.,* 846 F.2d 1343, 1349 (11th Cir.1988) ("A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense. . . . An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case.").

A number of courts have struck affirmative defenses that deal with proximate causation because they are not properly affirmative defenses. *See e.g. White,* 828 F.Supp. at 313, and *Apex Oil Co. v. DiMauro,* 713 F.Supp. 587, 604 (S.D.N.Y. 1989). Other courts have not. *See e.g. Gregor,* 1995 WL 931093, at *5 (refusing to strike causation affirmative defenses because plaintiff had made no showing of prejudice, and thus the affirmative defenses could be "safely ignored."). *See also White,* 828 F.Supp. at 313 n. 13 (striking affirmative defenses based on causation, but noting that "plaintiff has accomplished very little, if anything, by including the causation defenses in its motion to strike.").

On the one hand, Delapa and Derderian should be just as happy not to have to address the issues relating to proximate causation through affirmative defenses since "it is well established that the party asserting an affirmative defense usually has the burden of proving it." *Rawson,* 846 F.2d at 1349 (internal quotation marks omitted). At the same time, motions to strike are disfavored, and denying the motion to strike these defenses will not prejudice the FDIC. Therefore, the FDIC's Motion to Strike Affirmative Defenses Based on Causation is **DENIED.**

#### IV. *AFFIRMATIVE DEFENSES NOT BASED ON CONDUCT OF FEDERAL AGENCIES*

In its Motion to Strike Affirmative Defenses Which Are *Not* Based on the Conduct of Federal Regulatory Agencies, the FDIC moves to strike the following affirmative defenses:

(A) Statute of limitations (Delapa 4, Derderian 6, Gladstone 4);

(B) FDIC's state and federal common law claims are preempted by 12 U.S.C. § 1821(k) (Delapa 14, Derderian 26)

With regard to preemption, Delapa and Derderian indicate that they are willing to withdraw this defense if the FDIC will cease opposing affirmative defenses based on the actions of federal agencies on the grounds that they conflict with federal common law. Because I held above that there is no federal common law reason not to recognize affirmative defenses based on the actions of federal agencies, the condition for Delapa's and Derderian's waiver of their preemption defense is met. Therefore the FDIC's Motion to Strike the Preemption Defense is **GRANTED.**

 With regard to the statute of limitations, the FDIC moves that I stand by my ruling in *Resolution Trust Corporation v. Gladstone,* 895 F.Supp. 356 (D.Mass. 1995). I held there that "the defendants' fiduciary duty to [HFSB] arose from their implied contractual relationship as directors and/or officers of the institution. Accordingly, the appropriate statute of limitations is the six year contract period." *Id.* at 374. I went on to hold that "since all loans at issue here originated less than

six years prior to the RTC being appointed receiver, none of the claims were time barred when the plaintiff took over the bank. Therefore, since the RTC commenced this action within six years of the origination of the earliest loan in question, the action is timely." *Id.*

Delapa and Derderian argue that I should reexamine my 1995 decision because it rested on a premise that is no longer good law, namely that "federal law exclusively governs the RTC's claims." *Id. See Atherton v. FDIC,* 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) ("There is no federal common law that would create a general standard of care applicable to [a suit by the FDIC against officers and directors of a bank in receivership].").

But my decision that the FDIC's complaint sounded in contract rather than in tort law was in no way grounded on the premise that federal law governs the RTC's claims. It was grounded in a finding that each defendant "had a fiduciary duty stemming from [his] implied contractual relationship with [HFSB]." Thus, I see no reason to revisit my holding that the six year statute of limitations for contracts claims holds, and the FDIC's Motion to Strike the Statute of Limitations Defense is **GRANTED**.

## V. *CONCLUSION*

For the foregoing reasons, the FDIC's Motion to Strike Affirmative Defenses Which *Are* Based on the Conduct of Federal Agencies (# 306) is **DENIED** with the exception of the Motion to Strike the Defense of Laches, which is **GRANTED**. The FDIC's Motion to Strike Affirmative Defenses Which Are *Not* Based on the Conduct of Federal Agencies (# 304) is **GRANTED**.

**SO ORDERED.**