OPINION OF THE COURT
Herbert Kramer, J.
We are writing a formal decision in response to what is ordinarily dealt with in a much more cursory fashion with the hope that it will provide needed instruction and information to the bar. In this tax lien foreclosure, plaintiffs seek an order of *720 publication for the defendant, Seamans Bank for Savings, claiming that they are otherwise unable to effect service. The motion is denied. A pro forma attempt at service upon this bank, which has not been in operation for many years, will not suffice to satisfy the plaintiffs’ obligations in this regard. For the reasons discussed below, plaintiffs are directed to perform a thorough investigation through the Federal Deposit Insurance Corporation to determine the current status of the lien against this property which investigation must address the legal and factual issues that are implicated in the transactions that obtained after the failure of this bank.
This is the second such application. Initially this court denied the application and directed plaintiffs to serve the state and federal banking departments as well as the attorney last known to have represented the bank. Plaintiffs assert that all efforts in these directions have failed. However, none of these efforts nor the seeming “disappearance” of this at one time well-known bank suffice to justify notice by publication, which, as shall be seen below, would not serve to extinguish the rights of the lienholder.
Banks, unlike people, do not simply disappear. What was not disclosed in either of the plaintiffs applications and what this court determined sua sponte via its own search of the Internet is that at some point in the past the assets of this bank were seized by the Federal Deposit Insurance Corporation (FDIC). (See National Mtge. Consultants v Elizaitis, 3 Misc 3d 1109[A], 2004 NY Slip Op 50525[U] [Sup Ct, Suffolk County 2004].)
At this juncture it is both instructive and necessary to review the roles played by the FDIC. This is because the FDIC’s role in the seizure of the bank’s assets and its disposition of same will determine the means and methods for insuring, as plaintiff must, that the defunct bank’s lien is properly extinguished by this foreclosure proceeding. Unless this is accomplished, the assignee (s) of that lien may well have a valid interest in the property even after foreclosure and sale. (See National Heritage Life Ins. Co. v T.J. Props. Co., 286 AD2d 715 [2d Dept 2001]; Raven Portfolio v City of Watertown, 280 AD2d 888 [4th Dept 2001]; but see NYCTL 1998-1 Trust v Cooper Third Assoc., 11 Misc 3d 1080[A], 2006 NY Slip Op 50634[U] [Sup Ct, Richmond County 2006].)
“The purpose of creating the FDIC was to lend stability and confidence in the national banking system, first by providing depositors with insurance *721 for payment in the event of a bank’s insolvency, and second by taking custody of a failed bank’s assets through FDIC’s authority as a receiver of the failed bank.[1]
Congress thus authorized the FDIC to act in its corporate capacity as insurer and in a separate capacity as a receiver of a failed bank. . . .
“When a bank fails, the FDIC will generally appoint a receiver . . . The FDIC will then proceed to determine the future course of the failed bank. The FDIC has two alternatives: (1) a ‘deposit payoff or liquidation where the bank is closed and the FDIC pays depositors up to $100,000 per account limit out of the deposit insurance fund . . . or (2) a ‘purchase and assumption’ transaction where the FDIC arranges for the sale of the failed bank’s assets and deposit liabilities to another solvent bank . . . The failed bank reopens in the solvent bank’s name, and depositors are benefitted by uninterrupted banking service. . . .
“The assuming bank has the option to return to the FDIC in its receiver capacity those assets which the assuming bank finds to be of limited value . . . The FDIC in its ‘corporate’ capacity then purchases the returned assets from the receiver FDIC, which transfers the purchase price of the returned assets to the assuming bank . . . The corporate FDIC attempts to collect on the returned assets, and proceeds from these collections are applied to replenish the insurance fund.” (Federal Deposit Ins. Corp. v Eckert Seamans Cherin & Mellot, 754 F Supp 22, 24 [ED NY 1990] [citations omitted].)
“Under Federal law, ‘the [FDIC], when acting in its capacity as receiver, is exempted from the extinguishment of its property interests through sale, foreclosure, or levy.’ In this regard, 12 USC § 1825 (b) (2) states that ‘[n]o property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclo *722 sure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]’ . . .
“Notably, in July 1992, the FDIC promulgated, a policy statement which provides guidance with respect to the circumstances under which the FDIC is deemed to have consented to the foreclosure of an involuntary lien. According to the policy statement, ‘[i]f the [FDIC’s] interest is not of record, the [FDIC] hereby grants its consent under 12 U.S.C. 1825 (b) (2) as to any foreclosure by the holder of any bona fide lien which encumbers such property’ . . . Significantly, the policy statement indicates that the FDIC’s interest is considered ‘of record’ if: ‘such interest appears vested in the [FDIC] in its corporate capacity or as receiver for a financial institution in the public land records in accordance with local law, or such interest appears vested in a financial institution for which the [FDIC] has been appointed receiver in the public land records in accordance with local law and the [FDIC] has published notice in the Federal Register[2] that it has been appointed receiver for that financial institution.’ ” (CDS Recoveries v Davis, 277 AD2d 567, 568-569 [3d Dept 2000] [citations omitted] [holding that where a mortgage was recorded by the county clerk’s office and notice of the FDIC’s receivership was published in the Federal Register, the FDIC’s interest was “of record” and its consent to the tax sale was necessary in order to extinguish its interest in the property and the FDIC’s assignee was entitled to claim the same protections as the FDIC].)
The motion for an order of service by publication is denied. Plaintiff is directed to provide appropriate notice in accordance with this decision within 90 days of the date of this decision.

. “The Federal Deposit Insurance Act (the ‘Act’), 12 U.S.C. § 1811 et seq., provided that the FDIC ‘shall insure . . . the deposits of all banks . . .’ FDIC acts in its corporate capacity as an insurer under the provisions contained in section 1821 (Permanent Insurance Fund). The Act also authorized the FDIC to act as a receiver of insolvent banks pursuant to section 1822.” (Federal Deposit Ins. Corp. v Eckert Seamans Cherin & Mellot, 754 F Supp 22, 24 [ED NY 1990].)

. Indeed, this would be among the sources to check rather than the FDIC Web site as was indicated in plaintiffs submissions.